[616 NYS2d 534]

SYLVESTER WARNER, Appellant, v AMERICAN FLUORIDE CORP. et al., Respondents. (And a Third-Party Action.)

Second Department, September 12, 1994

## APPEARANCES OF COUNSEL

*Julien & Schlesinger, P. C.,* New York City *(David B. Turret* of counsel), for appellant.

*Lester, Schwab, Katz & Dwyer,* New York City *(Eric A. Portuguese* and *Judi L. Abbott* of counsel), for American Fluoride Corp., respondent.

*Donovan, Leisure, Newton & Irvine,* New York City *(Daniel J. Thomasch* and *Nicole M. Van Ackere* of counsel), for Ciba-Geigy Corporation, respondent.

*Holtzman & Urquhart,* Houston, Texas, and *Townley & Updike,* New York City *(Barbara M. Roth* of counsel), for Mobay Corporation, respondent. (One brief filed.)

*McCarter & English,* New York City *(John L. McGoldrick* of counsel; *Frederick T. Smith* on the brief), for Dow Chemical Corp., respondent.

## OPINION OF THE COURT

KRAUSMAN, J.

The central issue presented on appeal is whether the Federal Insecticide, Fungicide, and Rodenticide Act, more commonly known as FIFRA, preempts the plaintiff's State tort claims based upon the failure to adequately warn him of the

dangers of the pesticides to which he was exposed as an employee of the New York City Department of Correction. For the reasons which follow, we now join the majority of courts across the Nation in concluding that the language of FIFRA, its legislative history, and the recent decision of the United States Supreme Court in *Cipollone v Liggett Group* (505 US —, 112 S Ct 2608), compel the conclusion that FIFRA expressly preempts the plaintiff's causes of action to the extent that they are premised on the adequacy of pesticide warning labels. Accordingly, we find that the plaintiff's action was properly dismissed by the Supreme Court, Westchester County.

## I

The plaintiff Sylvester Warner is a former employee of the New York City Department of Correction. Warner alleges that while employed as a correction officer between 1966 and 1982, he was continuously exposed to several pesticides manufactured and distributed by the defendants, which were used to control pests and rodents at the Riker's Island and Hart's Island facilities. The pesticides sprayed at the facilities where the plaintiff was employed allegedly included Diazion 2D and 4E, manufactured by the CIBA-GEIGY Corp., Baygon, manufactured by the Mobay Chemical Corp., and Dursban 2E, manufactured by the Dow Chemical Company. As a result of his exposure to these pesticides, the plaintiff claims he developed toxic neuropathy, which left him permanently disabled, and prevented him from continuing employment as a correction officer.

In 1983 the plaintiff commenced this action against the three manufacturers of the pesticides to which he had allegedly been exposed, and the American Fluoride Corp., which distributed the subject pesticides to the New York City Department of Correction during the period of the plaintiff's employment. The complaint alleged, *inter alia,* that the defendants were negligent in manufacturing, selling, and distributing pesticides without properly and sufficiently testing them, and in failing to properly and sufficiently label the pesticides to warn the public of the danger of inhaling the chemicals, and how to avoid such danger. The complaint additionally contained causes of action premised upon breach of the implied warranty of merchantability and fitness for use, strict products liability, and violations of unnamed statutes, codes, laws, and ordinances.

In February 1992, nearly nine years after the commencement of this action, the defendant Dow Chemical Company (hereinafter Dow) moved for summary judgment, contending that the plaintiff's tort claims were preempted by Federal law because Dursban 2E, the insecticide manufactured and sold by Dow, had been approved and registered by the Environmental Protection Agency (hereinafter EPA) as required by FIFRA and its related regulations. In support of its motion, Dow noted that as part of the registration process, the EPA had approved all aspects of the form and content of the label which accompanies every container of Dursban 2E sold in the United States, and that the EPA's acceptance of the insecticide for registration demonstrated that the Federal agency had determined that Dursban 2E was reasonably safe if used pursuant to the mandated label. Dow further submitted that since FIFRA and its associated regulations form a pervasive regulatory scheme governing every aspect of the content of pesticide labeling, FIFRA's preemption of a State's authority to change EPA-approved labeling encompassed a State's authority to entertain common-law tort claims challenging the sufficiency of the warnings and instructions which accompany a pesticide. Dow also argued that if the plaintiff were to prevail on his failure to warn claim, a conflict between State and Federal law would arise, because the State of New York would, in effect, be requiring Dow to change its EPA-approved label or face a jury verdict, despite the EPA's determination that the label and warnings accompanying the product were adequate. Moreover, Dow contended that the approval by the EPA of Dursban 2E for registration and sale additionally barred any common-law State claim seeking damages based upon strict products liability, design defect, or breach of warranty.

The CIBA-GEIGY Corp. and the Mobay Chemical Corp. subsequently joined Dow in moving for summary judgment, similarly noting that the pesticides they manufactured were approved for registration by the EPA, and contending that FIFRA preempts a State's authority to entertain tort claims based upon inadequate warnings. In addition, the defendant American Fluoride Corp. moved for summary judgment, maintaining that as a distributor of the codefendants' products, it too was entitled to summary judgment upon the ground that the plaintiff's claims were wholly preempted by FIFRA.

In opposition to summary judgment, the plaintiff relied primarily upon the affidavit of Morris Zedeck, an expert in the

field of pharmacology. Zedeck averred that the subject pesticide labels were inadequate because they contained no information or warning about the permanent effect on the nerves or muscles that could be induced by a chronic exposure, and did not advise the user to notify and/or warn those who could reasonably be expected to be present in an area which had just been treated or sprayed of the potential hazards of chronic exposure. Zedeck further opined that a manufacturer's compliance with the minimal requirements of FIFRA did not mandate a finding that its warnings were adequate. The plaintiff also submitted an excerpt from the deposition testimony of Dr. Henry Fleck, who diagnosed him as suffering from chronic toxic neuropathy caused by an extended period of exposure to chemicals.

On June 19, 1992, the Supreme Court, Westchester County, granted the defendants' respective motions for summary judgment dismissing the complaint, citing two cases of the United States Court of Appeals which had determined that State common-law claims for inadequate labeling are preempted by FIFRA (see, *Papas v UpJohn Co.*, 926 F2d 1019; *Arkansas-Platte & Gulf Partnership v Van Waters & Rogers*, 959 F2d 158). The plaintiff now appeals, urging this Court to reject the view that FIFRA preempts or prohibits a person injured by exposure to pesticides from maintaining a tort action in State court for damages, even if that action includes an issue of whether the manufacturer's warnings were adequate.

## II: THE FEDERAL REGULATORY SCHEME

Our analysis of the preemptive scope of FIFRA (7 USC § 136 *et seq.)* must begin with a consideration of the requirements of FIFRA and the goals which it is intended to achieve. As the United States Supreme Court recently observed in *Wisconsin Pub. Intervenor v Mortier* (501 US 597, 601), FIFRA was primarily a pesticide licensing and labeling law until 1972, when it was amended to authorize the EPA to regulate most aspects of the development, manufacture, sale, and use of pesticides (see generally, Ausness, *Federal Preemption of State Products Liability Doctrines*, 44 SC L Rev 187, 213 [1993]). The 1972 amendments significantly strengthened the registration and labeling standards of FIFRA, and granted increased enforcement authority to the EPA, which had been charged with Federal oversight of pesticides since 1970 (see, *Wisconsin Pub. Intervenor v Mortier, supra*, at 601-602). Today, all pesticides

sold in the United States must be registered with the EPA in compliance with the requirements of FIFRA and its associated regulations *(see,* 7 USC § 136a [a], [c]).

In order to register a pesticide under FIFRA, a manufacturer must submit the pesticide's name, labeling information, and directions for use to the EPA. The EPA is then charged with the duty of determining what supporting data the manufacturer must provide concerning, *inter alia,* the physical and chemical characteristics of the pesticide (40 CFR 158.190). The EPA may approve a registration request only if the product can perform its intended function without "unreasonable adverse effects on the environment" (7 USC § 136a [c] [5] [C]). The phrase "unreasonable adverse effects on the environment", is, in turn, defined by the Act as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide" (7 USC § 136 [bb]). At the time of registration, the manufacturer is also required to submit a proposed label to the EPA for approval *(see,* 7 USC § 136a [c] [1] [C]), and the agency must ensure that the proposed label is both "adequate to protect health and the environment" (7 USC § 136 [q] [1] [F]), and "likely to be read and understood" (7 USC § 136 [q] [1] [E]). EPA regulations provide specific requirements governing the content of warning labels, and the placement, type size, and prominence of the warnings and precautionary statements (40 CFR 156.10 [h]).

The 1972 amendments which transformed FIFRA into a "comprehensive regulatory statute" *(Wisconsin Pub. Intervenor v Mortier, supra,* at 601), also added a new provision "address[ing] the allocation of pesticide regulation authority to the states" *(see,* Comment, *FIFRA Preemption of State Common Law Claims after Cipollone v. Liggett Group, Inc.,* 68 Wash L Rev 859, 868 [1993]). The subject provision, section 136v, provides in pertinent part that:

"(a) In general. A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this Act.

"(b) Uniformity. Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act".

While the legislative history reflecting the intended reach of section 136v (b) is somewhat limited, the House Committee

report on this provision of the Act notes that "[i]n dividing the responsibility between the State and the Federal Government for the management of an effective pesticide program, the Committee has adopted language which is intended to completely preempt State authority in regard to labeling and packaging" (HR Rep No. 92-511, 92d Cong, 2d Sess 16 [Sept. 25, 1971]; 1972 US Code Cong & Admin News 3993). However, the Committee reports do not expressly indicate whether or not Congress intended "State authority" to encompass common-law actions for damages.

## III

Prior to the decision of the United States Supreme Court in *Cipollone v Liggett Group* (505 US —, —, 112 S Ct 2608, 2617, *supra)*, both Federal and State courts were divided over the issue of whether section 136v (b), which expressly forbids States from imposing additional or conflicting labeling requirements, preempts State tort claims premised upon inadequate pesticide labeling and failure to provide adequate warnings. As a general rule, State law will be found to be expressly preempted by Federal law where the intent to preempt is explicit from the language of the Federal provision *(see, Wisconsin Pub. Intervenor v Mortier, supra)*. In addition, State law may be implicitly preempted if that law actually conflicts with Federal law *(see, Pacific Gas & Elec. v Energy Resources Commn.,* 461 US 190, 204), or if Federal law "so thoroughly occupies a legislative field ' "as to make reasonable the inference that Congress left no room for the States to supplement it" ' " *(Cipollone v Liggett Group, supra,* 505 US, at —, 112 S Ct, at 2617, relying upon *Fidelity Fed. Sav. & Loan Assn. v De La Cuesta,* 458 US 141, 153). A conflict between State law and Federal law may arise either when " 'compliance with both federal and state regulations is a physical impossibility' " *(Wisconsin Pub. Intervenor v Mortier, supra,* at 605, quoting *Florida Avocado Growers v Paul,* 373 US 132, 142-143), or when a State law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' " *(Wisconsin Pub. Intervenor v Mortier, supra,* at 605, quoting *Hines v Davidowitz,* 312 US 52, 67).

In *Ferebee v Chevron Chem. Co.* (736 F2d 1529), the United States Court of Appeals for the District of Columbia Circuit, the first Federal appeals court to address FIFRA preemption, held that causes of action under State law arising from failure

to warn were neither expressly nor impliedly preempted by section 136v (b), and, consequently, a determination by the EPA that a pesticide's label was adequate for purposes of FIFRA did not compel a jury to find that the label was adequate for purposes of State tort law as well. *Ferebee* involved a suit by the estate of an agricultural worker who allegedly contracted pulmonary fibrosis as a result of long-term skin exposure to paraquat, a herbicide distributed in the United States by the defendant Chevron Chemical Co. (hereinafter Chevron). A jury awarded the estate $60,000 on the theory that Chevron's failure to label paraquat in a manner which adequately warned that long-term skin exposure to the substance could cause serious lung disease made Chevron strictly liable for the decedent's injuries. In upholding the jury verdict, the appeals court found that FIFRA did not expressly preempt the plaintiffs' claims because section 136v (b), which precluded States from directly ordering changes in EPA approved labels, did not explicitly preempt State damage actions. The *Ferebee* court further rejected Chevron's argument that FIFRA impliedly preempted the plaintiffs' failure to warn claims because to permit them to recover damages under State tort law would be, in effect, to impose requirements for labeling in addition to or different from those imposed by FIFRA. In reaching its determination that permitting the plaintiffs to maintain a tort action would not conflict with FIFRA's prohibition against the imposition of additional labeling requirements by the States, the *Ferebee* court reasoned that "[t]he verdict itself does not command Chevron to alter its label—the verdict merely tells Chevron that, if it chooses to continue selling paraquat in Maryland, it may have to compensate for some of the resulting injuries. That may in some sense impose a burden on the sale of paraquat in Maryland, but it is not equivalent to a direct regulatory command that Chevron change its label" *(Ferebee v Chevron Chem. Co., supra,* at 1541). The court thus concluded that even if the EPA refused to permit Chevron to alter its label, the State of Maryland could decide that "as between a manufacturer and an injured party, the manufacturer ought to bear the cost of compensating for those injuries that could have been prevented with a more detailed label than that approved by the EPA" *(Ferebee v Chevron Chem. Co., supra,* at 1541).

Although a number of Federal District Courts initially accepted *Ferebee's* "choice of reaction" analysis, and concluded that FIFRA neither expressly nor impliedly preempts State

tort claims based upon failure to warn *(see, e.g., Couture v Dow Chem. U.S.A.,* 804 F Supp 1298 [D Mont]; *Riden v ICI Ams.,* 763 F Supp 1500 [WD Mo]; *Roberts v Dow Chem. Co.,* 702 F Supp 195 [ND Ill]; *Cox v Velsicol Chem. Corp.,* 704 F Supp 85 [ED Pa]), the next two Federal appellate courts to consider the issue rejected the *Ferebee* approach, and held that FIFRA impliedly preempts State damages actions which challenge the adequacy of EPA-approved pesticide labels. In *Papas v UpJohn Co.* (926 F 2d 1019, 1025), the United States Court of Appeals for the Eleventh Circuit concluded that FIFRA preempted State common-law actions based on labeling claims, since a jury's determination that a pesticide's labeling is inadequate "results in a direct conflict with the EPA's determination that the labeling is adequate to protect against health risks". The *Papas* court *(supra,* at 1025) further noted that such a jury verdict would also be "in direct conflict with the Congressional intent that *the EPA Administrator* determine the reasonableness of the risks to man and the environment posed by the pesticide", and would stand as an obstacle to the EPA's objective of achieving uniform pesticide labeling across the Nation. Although the Eleventh Circuit acknowledged that it might be possible for a manufacturer to comply with both Federal regulations and the requirements of State common law as dictated by State law damages awards, it concluded *(supra,* at 1026) that "the pressure of such awards would interfere with the EPA's regulatory process because manufacturers would likely press the EPA to change its labeling requirements to reflect the jury awards so as to free the manufacturer from future tort liability for the same jury-found 'inadequacies' in labeling". Thus, the *Papas* court concluded that "[a]llowing state common law tort actions based on labeling claims would permit state court juries to do what state legislatures and state administrative agencies are forbidden to do: impose requirements for labeling pesticides" *(Papas v UpJohn Co., supra,* at 1026).

Similarly, in *Arkansas-Platte & Gulf Partnership v Van Waters & Rogers* (959 F 2d 158, *supra),* the United States Court of Appeals for the Tenth Circuit concluded that State tort actions based on labeling and alleged failure to warn are impliedly preempted by virtue of the direct conflict posed with Federal uniform regulation of pesticides. In so holding, the Tenth Circuit rejected the *Ferebee* court's "choice of reaction" analysis, observing that "[a] business choice between paying damages and changing the label is only notional" *(Arkansas-*

*Platte & Gulf Partnership v Van Waters & Rogers, supra,* at 162).

## IV: CIPOLLONE V LIGGETT GROUP

Although the United States Supreme Court has not directly ruled on the issue of whether FIFRA preempts State common-law actions based on failure to warn, its decision in *Cipollone v Liggett Group* (505 US —, 112 S Ct 2608, *supra)* has had a wide reaching impact on analysis of this issue. In *Cipollone,* the Court was called upon to determine whether section 5 (b) (15 USC § 1334 [b]) of the Federal Cigarette Labeling and Advertising Act, as amended in 1969 by the Public Health Cigarette Smoking Act *(see,* 15 USC §§ 1331-1340), preempted a New Jersey woman's claim that she had contracted lung cancer due to the failure of the defendant manufacturers to provide adequate warnings of the health consequences of smoking. The plurality opinion found that the 1969 amendment to the Act, which broadened section 5 (b) to provide that *"[n]o requirement or prohibition* based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are [lawfully] labeled" (emphasis added) expressly preempted State damages claims challenging the sufficiency of Federally mandated cigarette warning labels. In so holding, the Court declared that the preemptive scope of section 5 (b), as amended in 1969, was governed entirely by its express language, and that the use of the phrase "[n]o requirement or prohibition" in the amended section "sweeps broadly and suggests no distinction between positive enactments and common law" *(supra,* 505 US, at —, 112 S Ct, at 2620). The *Cipollone* plurality thus reasoned that the language of § 5 (b) evidenced an intent to encompass common-law damages, since such actions are premised on the existence of a legal duty, and "it is difficult to say that such actions do not impose 'requirements or prohibitions' " *(supra,* 505 US, at —, 112 S Ct, at 2620). In support of its conclusion that State common-law actions do indeed impose requirements upon manufacturers other than those imposed by Federal law, the Court pointed out that "[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy" *(Cipollone v Liggett Group, supra,* 505 US, at —, 112 S Ct, at 2620, quoting *San Diego Unions v*

*Garmon,* 359 US 236, 247). The *Cipollone* Court thus concluded that the plaintiffs' claims were preempted to the extent that they relied upon "a state law 'requirement or prohibition * * * with respect to * * * advertising or promotion' " of cigarettes *(Cipollone v Liggett Group, supra,* 505 US, at —, 112 US, at 2621).

## V: FIFRA PREEMPTION IN THE WAKE OF CIPOLLONE

Following its decision in *Cipollone (supra),* the Supreme Court remitted *Papas v UpJohn Co.* (926 F2d 1019, *supra)* to the Eleventh Circuit, and *Arkansas-Platte & Gulf Partnership v Van Waters & Rogers* (959 F2d 158, *supra)* to the Tenth Circuit for reconsideration in light of its decision. On remittitur, both appeals courts, relying upon the language of section 136v (b) and the reasoning of the Supreme Court in *Cipollone,* concluded that FIFRA expressly preempts State damages actions based on allegations of inadequate labeling and failure to warn *(see, Papas v UpJohn Co.,* 985 F2d 516; *Arkansas-Platte & Gulf Partnership v Van Waters & Rogers,* 981 F2d 1177). In reaching its determination on remittitur, the *Papas* court found that an action to recover damages in State court was a "requirement" within the meaning of section 136v (b) of FIFRA, which broadly prohibits "any requirements for labeling or packaging in addition to or different from" the labeling requirements of the Act. The court thus reasoned that FIFRA preempts any action in State court for damages which depends upon a showing that a pesticide manufacturer's labeling or packaging fails to meet a standard in addition to or different from the Act's requirements. The *Arkansas-Platte* court similarly found that *Cipollone's* reasoning supported a conclusion that FIFRA expressly preempts State failure to warn causes of action, concluding that "[a]lthough the words employed in § 136v (b) of FIFRA are different from those in § 5 (b) of the Cigarette Smoking Act, their effect is the same. Section 136v (b) exists in the context of what Federal law permits the state to regulate, and it simply deprives the state of power to adopt *any* regulation. This is as broad as the § 5 (b) proscription" *(Arkansas-Platte & Gulf Partnership v Van Waters & Rogers, supra,* 981 F2d, at 1179).

All of the Federal appeals courts and the majority of Federal District Courts and State courts which have considered the issue of preemption in the wake of *Cipollone* have joined the Tenth and Eleventh Circuits in concluding that FIFRA

preempts common-law failure to warn and inadequate labeling claims *(see, e.g., Worm v American Cyanamid Co.,* 5 F3d 744 [4th Cir 1993]; *Shaw v Dow Brands,* 994 F2d 364 [7th Cir 1993]; *King v Dupont de Nemours & Co.,* 996 F2d 1346 [1st Cir 1993]; *Bingham v Terminix Intl. Co.,* 850 F Supp 516 [SD Miss 1994]; *Allen v Pennco Eng'g Co.,* 847 F Supp 1315 [MD La 1994]; *Trinity Mtn. Seed Co. v MSD Agvet,* 844 F Supp 597 [D Idaho 1994]; *Quad R Farms v American Cyanamid Co.,* 840 F Supp 694 [D Minn 1993]; *Burke v Dow Chem. Co.,* 797 F Supp 1128 [ED NY 1992];\* *Williams v State,* 640 So 2d 365 [La App 1994]). However, several Federal District and State courts have continued to adhere to the analysis of the Court of Appeals for the District of Columbia Circuit in *Ferebee (supra),* and have concluded that FIFRA does not preempt State tort claims *(see, e.g., MacDonald v Monsanto Co.,* 813 F Supp 1258 [ED Tex 1993]; *Thornton v Fondren Green Apts.,* 788 F Supp 928 [SD Tex 1992]; *Montana Pole & Treating Plant v Laucks & Co.,* 775 F Supp 1339 [D Mont 1991], *affd on other grounds* 993 F2d 676 [9th Cir]; *Macrie v SDS Biotech Corp.,* 267 NJ Super 34, 630 A2d 805 [1993]; *Ciba-Geigy Corp. v Alter,* 309 Ark 426, 834 SW2d 136).

## VI

Guided by the plain language of FIFRA's preemption provision, the legislative history of the Act, the analysis of the United States Supreme Court in *Cipollone,* and the weight of authority in this area, we now hold that the plaintiff's causes of action, to the extent that they are premised upon failure to warn and inadequate warning labels, must be dismissed as preempted by Federal law. The reasoning of the Court in

---

\* Although the *Burke* court *(see, Burke v Dow Chem. Co.,* 797 F Supp 1128, *supra),* disagreed in some respects with the preemption analysis utilized by other courts, it acknowledged that in light of *Cipollone's* reasoning, any claim by the plaintiffs that the defendants' pesticide products were mislabeled would be expressly preempted by FIFRA if, in fact, the EPA-labels were affixed to the subject containers. The *Burke* court, however, narrowed the scope of its ruling by holding that if "warnings to the trade, warnings apart from labels or packaging, limitation on sales to professionals, or other protections falling generally within the ambit of warnings should have been used when the content of the label was fixed by EPA there remains a liability question for the trier of fact" *(Burke v Dow Chem. Co., supra,* at 1140). The court thus concluded that while the defendants would be entitled to some preemption protection under FIFRA, the precise extent to which the plaintiffs' claims would be preempted could not be determined prior to the completion of discovery.

*Cipollone* makes clear that the preemptive scope of FIFRA's section 136v (b) is not limited to positive enactments by legislatures or agencies. To the contrary, since common-law rules are "a potent method of governing conduct", and common-law damage actions are premised on the existence of a legal duty *(see, Cipollone v Liggett Group,* 505 US —, —, 112 S Ct 2608, 2620, *supra),* a verdict in such an action must be considered more than a compensatory mechanism for the individual plaintiff *(see,* Smith and Coonrod, *Cipollone's Effect on FIFRA Preemption,* 61 U Mo—KC L Rev 489 [1993]). A tort action which seeks to recover damages based upon the adequacy of pesticide warning labels under State law thus comes within the ambit of FIFRA's bar against the imposition of "any requirements for labeling or packaging in addition to or different from those required" by the Act. Accordingly, to the extent that the plaintiff's negligence, strict liability, and breach of implied warranty claims require a showing that the defendants' labeling and packaging were a factor in causing his injuries, those claims are expressly preempted by FIFRA *(see, Papas v UpJohn Co.,* 985 F2d 516, 520, *supra).*

We further note our disagreement with those courts which have continued, in the wake of *Cipollone,* to adhere to *Ferebee's* "choice of reaction" analysis. As the United States Court of Appeals for the Seventh Circuit recently pointed out in *Shaw v Dow Brands* (994 F2d 364, 371, *supra),* FIFRA's preemption language is no less sweeping than the language of the 1969 Cigarette Act. While FIFRA provides that a State " 'shall not impose * * * any requirements for labeling or packaging in addition to or different from those required' [under the Act], while the cigarette law says that '[n]o requirement[s] or prohibition[s] * * * imposed under State law' shall be permitted. Both seem equally emphatic: '[n]o requirements or prohibitions' is just another way of saying a '[s]tate shall not impose * * * any requirements'. Not even the most dedicated hair splitter could distinguish these statements" *(supra,* at 371). Thus, as the *Shaw* court concluded, the distinction between common-law actions and the positive enactment of State statutes, which is at the heart of the *Ferebee* court's preemption analysis, has been "evaporated" by *Cipollone (Shaw v Dow Brands, supra,* at 370).

Finally, we note that although FIFRA does not preempt the plaintiff's cause of action based upon negligent testing of the subject pesticides *(see, Worm v American Cyanamid Co.,* 5 F3d 744, 749, *supra; Bingham v Terminix Intl. Co.,* 850 F Supp

516, *supra; see also, Burke v Dow Chem. Co.*, 797 F Supp 1128, 1148, *supra),* the plaintiff failed to submit any evidentiary proof in support of this cause of action, although the action had been pending for nine years prior to the defendants' motions for summary judgment. To the contrary, the plaintiff's evidentiary submissions demonstrated that, despite the broad allegations of his complaint, his theory of recovery against the defendants was predicated solely upon their alleged failure to adequately label their products. Under these circumstances, we find that the Supreme Court, Westchester County, properly dismissed the complaint in its entirety.

We have examined the plaintiff's remaining contentions, and find that they are without merit.

LAWRENCE, J. P., RITTER and FRIEDMANN, JJ., concur.

Ordered that the order is affirmed, with one bill of costs.