OPINION OF THE COURT
George B. Ceresia, Jr., J.
background
Plaintiff commenced this action in 1983 seeking damages for personal injuries allegedly sustained at plaintiffs workplace, Rensselaer Polytechnic Institute (R.P.I.), as a result of exposure to pesticides and insecticides from 1988-1990, manufactured or marketed by the named defendants, while working on the cleaning staff in proximity to a pesticide applicator. Plaintiff claims resulting permanent disability since 1991. R.P.I. is not a party to this lawsuit. Plaintiff’s original complaint alleged (1) negligent manufacturing, testing, distribution, promotion and sale of the pesticides and insecticides, and failure to adequately label and warn of dangers; (2) defective design, i.e., products *450 not safe for the use for which they were intended, and failure to adequately instruct /warn, and strict liability in tort; (3) breach of implied and/or express warranties of fitness, merchantability and suitability. Plaintiffs amended complaint names two additional defendants, Rofan Services and Epco, Inc., general partners of defendant DowElanco, without opposition. The amended complaint added several causes and expanded several others to allege as follows: (1) negligent testing, negligent design, negligent failure to present information to the Environmental Protection Agency (EPA), negligently representing the product as safe, and negligent marketing; failure to warn, breach of the Federal Insecticide, Fungicide, and Rodenticide Act (hereinafter FIFRA) by failing to report possible adverse health effects to the EPA; and failure to research and test, rendering defendants jointly and severally liable; (2) defective design, i.e., producto not reasonably safe for intended usage because not properly researched/tested for long-term effects of reasonably foreseeable misuses, proximately causing plaintiff’s injuries; (3) breach of implied warranty of safety and fitness for intended purposes; (4) (new) that the Dow defendants fraudulently and intentionally concealed from the public and the EPA the lack of testing and research on its Dursban pesticide, and the potential unreasonable adverse health risks associated with exposure to these pesticides, causing the EPA to continue the conditional registration of these products (seeking punitive damages); and (5) against the Dow defendants, breach of voluntarily created express warranties made to the public and pesticide applicators that the Dursban pesticides were "safe” and would not cause harm to humans during application, through advertisement, written statements.
Defendants jointly moved for summary judgment dismissing the complaint, arguing that most of the allegations in plaintiff s complaint, as supplemented by plaintiff’s responses to the joint interrogatories, essentially allege failure to warn of the dangers of the insecticides which claims defendants contend are preempted by FIFRA and barred by State law (ECL 33-0303 [vesting authority in Commissioner]). Defendants also claimed that plaintiff failed to state a claim that the products are "dangerous”. Defendants’ various defenses and contentions in support of summary judgment will be discussed.
PREEMPTION UNDER FIFRA
FIFRA (7 USC § 136 et seq.) is a comprehensive regulatory scheme which authorizes the EPA to regulate most aspects of *451 the development, manufacture, sale, labeling, packaging and use of pesticides and insecticides. All pesticides sold in the United States must be registered with the EPA in compliance with FIFRA and its regulations (7 USC § 136a [c]), which registration requires a finding that the product can function without "unreasonable adverse effects on the environment” (7 USC § 136a [c] [5] [C]; § 136 [bb]). EPA regulations provide specific requirements governing the content of warning labels, and the placement, type, size, and prominence of the warnings and cautionary statements on labels, which must be approved by the EPA (see, 7 USC § 136a [c] [1] [C]; § 136 [q] [1] [F]; 40 CFR 156.10 [h]). FIFRA contains an express preemption provision which prohibits States from imposing or continuing in effect "any requirements for labeling or packaging in addition to or different from those required under [FIFRA]” (7 USC § 136v [b] ["the preemption provision of FIFRA”]).
It is now well settled that this preemption provision precludes both State regulation and State common-law claims premised upon the failure to provide adequate warnings (June v Laris, 205 AD2d 166 [3d Dept 1994]; see, Warner v American Flouride Corp., 204 AD2d 1 [2d Dept 1994]; Cipollone v Liggett Group, 505 US 504). Recently, the Ninth Circuit Court of Appeals joined the vast majority of circuit courts (i.e., seven) in similarly concluding that FIFRA’s "any requirement” provision prohibits State regularity / statutory as well as common-law tort claims premised upon a product’s labeling or packaging, guided by the Supreme Court’s Cipollone decision which addressed an equivalent statute (Taylor AG Indus. v Pure-Gro, 54 F3d 555, 560-561 [9th Cir 1995]). Accordingly, in the case sub judice, those portions of plaintiffs amended complaint that raise failure to warn claims premised upon inadequate warnings or labels are preempted under section 136v (b) of FIFRA to the extent they would require additional or different information on the defendant manufacturers’ labels (see, Taylor AG Indus. v Pure-Gro, supra; June v Laris, supra; Warner v American Flouride Co., supra; Cipollone v Liggett Group, supra).
Further, plaintiffs negligent testing claim (in the first cause of action), to the extent it is based upon a failure to warn theory, is preempted because such a claim would "require a showing that [the defendants manufacturers’] [packaging and labeling] should have included additional, or more clearly stated, warnings” (Cipollone v Liggett Group, 505 US, at 524, supra; Warner v American Flouride Co., supra, at 3, 12-13 [dismissing negligence, strict tort liability, and breach of *452 implied warranty claims premised upon inadequate labels]). To the extent plaintiff does not rely on defendants’ labels or packaging to allege negligent testing, such claims are not preempted (Cipollone v Liggett Group, 505 US, at 524, supra; Taylor AG Indus, v Pure-Gro, supra, 54 F3d, at 561-562).
Plaintiffs fourth cause of action is asserted against the Dow defendants for fraudulent concealment. In essence, plaintiff asserts defendants concealed (1) the lack of research and testing; and (2) the health risks associated with exposure, causing EPA’s continued registration of the chemical products. It is a close question whether FIFRA preempts this claim, i.e., whether it relates to "labeling and packaging” requirements or would impinge upon the EPA’s exclusive authority to determine whether to register a pesticide and, if so, under what circumstances (see, June v Laris, supra, 205 AD2d, at 168 [3d Dept 1994]). To the extent that this fraudulent concealment claim is premised upon defendants’ concealment of information from the EPA in violation of FIFRA, it is preempted, as it is not for a State court to regulate and police compliance with FIFRA procedure (Taylor AG Indus, v Pure-Gro, supra, at 561; Papas v Upjohn Co., 985 F2d 516, 519). To the extent plaintiffs claim is essentially one of inadequate registration procedures or inadequate warnings of the dangers (or unknown nature of damages due to inadequate testing), it is likewise clearly preempted. Insofar as plaintiff’s claim relies upon a State law duty to disclose such facts other than through "labels or advertising”, it would not be preempted (Cipollone v Liggett Group, supra, 505 US, at 527).
To the extent plaintiff’s claims are premised upon defendants’ failure to provide point-of-sale warnings or instructions, they necessarily challenge the adequacy of the labels’ warnings and are preempted (Papas v Upjohn Co., 985 F2d 516, 519, supra [11th Cir 1993], cert denied sub nom. Papas v Zoecon Corp., 510 US 913; Taylor AG Indus, v Pure-Gro, supra, 54 F3d, at 560). Also, any claims that defendants have failed to comply with FIFRA requirements is preempted as the States have no authority to police manufacturers’ compliance with the Federal FIFRA procedures (Papas v Upjohn Co., supra, at 519; Taylor AG Indus, v Pure-Gro, supra, at 561). Plaintiffs claims that EPA procedures are inadequate will not permit avoidance of FIFRA preemption (Taylor AG Indus, v Pure-Gro, supra, at 561).
Regarding plaintiffs express warranty claim against the Dow defendants, the Supreme Court in Cipollone (a plurality) held that a "voluntarily undertaken” contractual obligation is *453 not one imposed by the State, but rather is imposed by the contracting party itself, and therefore is not preempted by Federal labeling statutes even though the agreement is enforceable under State law (Cipollone v Liggett Group, supra, 505 US, at 526, and n 24). However, where, as here, plaintiffs claim of express warranty "would require imposition under State law of a requirement or prohibition [pertaining to any Federally registered pesticides] with respect to [labeling or packaging]” (supra, at 526), that is, liability for the claimed express warranty would be predicated on a duty to provide information in addition to or different from that required by FIFRA, it is preempted (see, Taylor AG Indus, v Pure-Gro, supra, 54 F3d, at 562). Plaintiffs fifth cause of action alleging breach of express warranty by the Dow defendants, to the extent it is premised upon the inadequacies of the defendants’ products’ labels or packaging or violations of FIFRA, is preempted. However, to the extent it is premised upon defendants’ advertising or other promotional statements outside and aside from the labels and packaging, or to the extent the allegedly misleading statements were inconsistent with the product labels, they are not preempted (see, Taylor AG Indus, v Pure-Gro, supra, 54 F3d, at 562-563). This would fall within the power allocated to the States by FIFRA to regulate the "sale or use” of Federally registered pesticides, which do not affect requirements for "labeling and packaging” (7 USC § 136v [a], M).
Plaintiff’s fourth cause of action alleges defendants breached an implied warranty of merchantability and reasonable safety and fitness for their intended purpose. Implied warranties arise under State law and are preempted by FIFRA to the extent the claim depends, directly or indirectly, upon inadequacies in labeling or packaging (Taylor AG Indus, v Pure-Gro, supra, 54 F3d, at 563; Cipollone v Liggett Group, 505 US 504, supra; see also, Papas v Upjohn Co., supra, 985 F2d, at 519-520 [11th Cir]; Warner v American Flouride Co., supra, 204 AD2d, at 13). Further discovery will be required to test the parameters of this cause of action, and thus defendants are denied summary judgment on the fourth claim.
Plaintiff also raises a design defect claim in her first cause of action. The defect alleged is not yet clear, other than general allegations of dangerousness, and in view of the outstanding discovery it would be inappropriate to grant defendants summary judgment on this claim. Plaintiffs defective/negligent design claim is premised upon inadequate research and test *454 ing, their susceptibility to foreseeable misuse and their danger when used as intended. In her responses to interrogatories, plaintiff specifies the defects were that the products contained chemicals known to be dangerous to humans upon exposure. Cipollone (supra) suggests in dicta that FIFRA would not preempt all State common-law actions, including design defects (505 US, at 523). To the extent plaintiffs design defect claim is premised upon inadequate testing and research unrelated to the failure to warn or inadequate labeling/packaging theories, they are not preempted, upon a straightforward application of the FIFRA preemption principles articulated in Warner, June and Taylor (supra). Also, the EPA registration of these products required a finding that the products can perform their intended function without "unreasonable * * * effects on the environment” (7 USC § 136a [c] [5] [C]), defined as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide” (7 USC § 136 [bb]). Thus, the comprehensive regulatory scheme embodied in FIFRA allocates to the EPA, and not State courts, the authority to judge the design, manufacture safety, risks, sale and use of pesticides (Warner v American Flouride Co., supra, 204 AD2d, at 5-6). To the extent plaintiffs design defect claim is an effort to impinge on the EPA’s exclusive regulatory authority to register pesticides and control their use and labels, it would be preempted.
RESPONSIBLE INTERMEDIARY DOCTRINE
The defendants raise the defense on their motion for summary judgment that plaintiff’s claims are barred by the "responsible intermediary doctrine” in that defendants wholesale their chemical products only to companies that reformulate their product into other pesticides, or sell to certified pesticide applicators. The responsible intermediary doctrine has been applied in this State in cases involving prescription drugs to relieve'a drug manufacturer of liability on a theory of a failure to warn the ultimate user of the dangers of the product because a prescribing physician generally is knowledgeable of the dangers of the product and capable of warning and informing the ultimate user, the patient (Wolfgruber v Upjohn Co., 72 AD2d 59 [4th Dept 1979], affd for reasons stated 52 NY2d 768; see also, Billsborrow v Dow Chem., 177 AD2d 7, 15, n). Defendants have not cited and this court has not located any appellate decision in this State extending and applying this doctrine to preclude as a matter of law claims as are pre *455 sented here against chemical manufacturers and suppliers. At the least, plaintiff has raised a question of fact to be submitted to a jury as to whether R.P.I. is a "responsible intermediary”, and whether R.P.I.’s conduct is an intervening cause relieving defendants of liability for failure to warn those ultimately exposed to the chemicals at issue (Billsborrow v Dow Chem., 177 AD2d 7 [2d Dept 1992], supra [question of fact for jury whether employer’s conduct was negligent and an intervening cause relieving Dow of liability for failure to warn employee exposed to Dow’s chemicals]).
Likewise, the related "knowledgeable user” concept relieves a manufacturer of liability on a failure to warn theory where the purchaser/user knows (or has reason to know) of the dangerous propensities of the product independent of the information supplied by the manufacturer/distributor (supra, at 15, n; Rosebrock v General Elec. Co., 236 NY 227). Case law does not establish that that doctrine is to be extended to relieve chemical manufacturers of liability to ultimate purchasers/ users, and there is still a question of fact whether R.P.I. (or its hired certified applicator) is such a knowledgeable user where discovery and depositions have not yet been conducted.
While no appellate decisions are cited (or have been found) on point, there is trial level authority adopting the so-called "bulk supplier doctrine”, holding that bulk suppliers of chemical products have no duty to warn remote parties injured as a result of contact with an altered chemical product, where the chemical supplier lacks control over the ultimate product, based upon impracticality and the nonfeasability of requiring such warnings/duty (Rivers v AT&T Tech., 147 Misc 2d 366 [Sup Ct, NY County]; see, Matera v Worksafe, Sup Ct, NY County, Nov. 30, 1989, Baer, J.). These decisions recognize, however, that the responsible intermediary and related doctrines have not yet been applied to bulk chemical manufacturers, and their analyses do not persuade this court to extend such doctrines, in the absence of appellate authority to do so, to the facts of this case or to grant summary judgment on that basis — particularly at this early stage where substantial discovery is outstanding (see, Bukowski v Coopervision, 185 AD2d 31, 34-35 [3d Dept 1993] [declining to extend or apply as a matter of law the informed intermediary doctrine to optometrist who dispensed contact lenses, and finding question of fact on sufficiency of warnings to optometrist which application of doctrine presupposes]). The Third Department emphasized in Bukowski that "implicit in the application of the doctrine is *456 the existence of a medical professional with the knowledge and expertise to assimilate technical information and, further, the corresponding need for that professional to assess the risks and benefits posed by the drug or device in light of the particular patient’s medical history and treatment needs” (supra, at 35). Defendants’ efforts to extend the doctrines to this category of chemical products is unconvincing and must be rejected. Finally, such doctrines have no application, to plaintiff’s design defect claims (supra, at 34, n 3).
STATE LAW PREEMPTION
Defendants submit that plaintiff’s non-failure-to-warn claims are preempted by State law. Specifically, defendants assert that FIFRA preserves the States’ rights to regulate the "sale or use” of Federally registered pesticides (7 USC § 136v [a]), and that New York has enacted its own comprehensive regulatory scheme (see, ECL 33-0303) governing pesticides and vested exclusive jurisdiction in the Commissioner of Environmental Conservation. Defendants claim that this State’s statutory and regulatory scheme preempts plaintiff’s remaining non-failure-to-warn State common-law causes of action.
Defendants have cited no authority to support their implied State preemption claim (and this court has not found any), and in sharp contrast to FIFRA, ECL article 33 contains no express preemption provisions. This court is unable to conclude by implication from (1) FIFRA’s reservation of State rights to regulate the "sale or use” of pesticides within the State, and (2) the State’s vesting of jurisdiction in the Department of Environmental Conservation Commissioner (ECL 33-0303), that State common-law actions are preempted by the State scheme. Indeed, even FIFRA’s express preemption provision does not preempt State actions not based upon a failure to warn / inadequate labeling. To conclude the State scheme impliedly preempts those causes would constitute a vast unprecedented leap, not warranted by the provisions of article 33.
It is true that FIFRA contemplates joint Federal-State control of pesticides, except to the extent preempted by the Federal statute and regulations (see, Weinberg, Practice Commentaries, McKinney’s Cons Laws of NY, Book 171/2, ECL art 33, at 656-657). Consistent therewith, ECL article 33 broadly delegates to the Commissioner power to act against dangerous pesticides, even to ban them outright, by means of legislative rulemaking (ECL 33-0303 [3] [d], [e]); confers exclusive jurisdiction in "all matters pertaining to the distribution, sale, use *457 and. transportation of pesticides” (ECL 33-0303 [1]); and created a State permit system for pesticides (see, Matter of Chemical Specialties Mfrs. Assn. v Jorline, 85 NY2d 382, 389-390 [1995] [Levine, J.] [upholding Commissioner’s authority to ban, by rulemaking, the use of DEBT in this State]). While the Commissioner may designate and then restrict or ban certain pesticides determined to be hazardous (supra, at 392; ECL 33-0101 [42] [b]), no reported decision supports the conclusion that all State common-law causes of action related to pesticide sale, production and distribution are thereby preempted by implication. The case law only goes so far as concluding that article 33’s (ECL 33-0303 [1]) vesting of exclusive authority to the Department of En viromental Conservation Commissioner may preempt local legislation (Long Is. Pest Control Assn. v Town of Huntington, 72 Misc 2d 1031 [1973], affd 43 AD2d 1020 [2d Dept 1974]; Ames v Smoot, 98 AD2d 216 [2d Dept 1983]; see also, Weinberg, Practice Commentaries, op. cit, ECL 33-0303, at 366 [1995 Pocket Part]). Accordingly, defendants’ motion for summary judgment dismissing all remaining causes of action based upon State law preemption and/or for lack of subject matter jurisdiction is denied.