[662 NYS2d 535]

CARYN DRATTEL et al., Appellants, v TOYOTA MOTOR CORPORATION et al., Respondents, et al., Defendants.

Second Department, September 15, 1997

## APPEARANCES OF COUNSEL

*Harry H. Lipsig & Partners, P. C.,* New York City *(Arthur H. Bryant, Alan M. Shapey* and *Brian I. Isaac* of counsel), for appellants.

*Lester Schwab Katz & Dwyer,* New York City *(Eric A. Portuguese* and *Steven B. Prystowsky* of counsel), for respondents.

*Mayer, Brown & Platt,* Washington, D.C. *(Kenneth S. Geller, Erika Z. Jones, John J. Sullivan* and *Lily Fu Swenson* of counsel), for Product Liability Advisory Council, Inc., *amicus curiae.*

## OPINION OF THE COURT

O'BRIEN, J. P.

The plaintiff Caryn Drattel was injured in an automobile accident while driving her 1991 Toyota Tercel. At the time of the collision, she was wearing both a shoulder harness and a lap belt. The plaintiffs commenced this action against the manufacturer and distributors of the Tercel (hereinafter referred to collectively as Toyota) and against the owner and driver of the other vehicle. The allegations in the complaint included claims that the Tercel was defectively designed and failed to provide adequate protection to its occupants in the event of a collision. The plaintiffs intended to prove, *inter alia,* that a safer alternative design included a driver's side air bag.

Toyota moved, *inter alia,* for partial summary judgment dismissing the plaintiffs' complaint to the extent that it relied upon the absence of an air bag. Toyota argued that any claims based on the absence of an air bag were preempted by the National Traffic and Motor Vehicle Safety Act of 1966 ([hereinafter the Safety Act] 49 USC § 30101 *et seq.)* and Federal Mo-

tor Vehicle Safety Standard No. 208 ([hereinafter Standard 208] 49 CFR 571.208).

The preemption clause of the Safety Act states: "When a motor vehicle safety standard is in effect under this chapter, a State or political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter" (49 USC § 30103 [b] [1]). Standard 208 gives automobile manufacturers three possible ways to comply with the minimum safety standards for passenger restraints. The installation of air bags is an option but it is not mandatory.

The trial court, based upon the decision of the Appellate Division, Fourth Department, in *Panarites v Williams* (216 AD2d 874), concluded that the plaintiffs' common-law claims, insofar as they were based on the absence of an air bag, were preempted by Federal law *(see also, Gardner v Honda Motor Co.,* 145 AD2d 41). Because Standard 208 gives automobile manufacturers the choice of whether to install air bags or a different passive restraint system, the court reasoned that permitting such common-law claims would, in effect, impose a standard which was not "identical" to the Federal standard. We disagree and reinstate the complaint against Toyota in its entirety.

Preemption of State-law causes of action should not be assumed but requires clear evidence that such was Congress' intent *(see, Medtronic, Inc. v Lohr,* 518 US —, 116 S Ct 2240). Upon consideration of the purpose of the Safety Act, its language and its legislative history, we conclude that Congress did not intend to preempt State common-law claims.

The statute was enacted to reduce traffic accidents and the deaths and injuries from such accidents *(see,* 49 USC § 30101; *State Farm Mut. Auto. Ins. Co. v Dole,* 802 F2d 474, 477, cert denied sub nom. *New York v Dole,* 480 US 951; *Chrysler Corp. v Tofany,* 419 F2d 499). The safety standards for manufacturers, promulgated by the National Highway Traffic Safety Administration, are intended to provide *minimum* standards for equipment performance *(see,* 49 USC § 30102 [a] [9]; *Association of Intl. Auto. Mfrs. v Abrams,* 84 F3d 602).

The express preemption clause uses the term "standard" (49 USC § 30103 [b] [1]), which the Supreme Court, Kings County, interpreted to encompass the general duties imposed by State common law. The issue of whether the term "standard"

includes State common law was left open by the United States Supreme Court in *Freightliner Corp. v Myrick* (514 US 280, 287, n 3). We conclude that the term "standard" refers to specific statutory or regulatory enactments *(see, e.g., Perez v Mini-Max Stores,* 231 AD2d 162), and is more limited in scope than the word "requirement" which has been construed to include State common-law duties *(see, e.g., Medtronic, Inc. v Lohr, supra; Cipollone v Liggett Group,* 505 US 504; *Sowell v Bausch & Lomb,* 230 AD2d 77; *Warner v American Flouride Corp.,* 204 AD2d 1). Certainly, Congress could have explicitly included State common law in the preemption clause if that was its intent *(see, e.g., CSX Transp. v Easterwood,* 507 US 658, 662 [the broad phrases in the preemption clause in the Federal Railroad Safety Act of 1970, which referred to any State " 'law, rule, regulation, order, or standard' ", included legal duties imposed on railroads by the common law]).

In any event, even if the preemption clause could be considered ambiguous, when it is considered in conjunction with the statute's savings clause and legislative history, it is clear that Congress did not intend to preempt State common-law claims *(see, Tebbetts v Ford Motor Co.,* 140 NH 203, 665 A2d 345, *cert denied* — US —, 116 S Ct 773). The savings clause provides that compliance with a Federal safety standard "does not exempt a person from liability at common law" (49 USC § 30103 [e]). The legislative history confirms that Congress did not intend compliance with the Federal minimum safety standards to shield automobile manufacturers from common-law liability *(see, Murphy v Nissan Motor Corp.,* 650 F Supp 922, 926-927).

Toyota contends that even if State common-law claims are not expressly preempted by the Safety Act, the doctrine of implied preemption precludes such claims *(see generally, Freightliner Corp. v Myrick, supra).* A Federal statute impliedly preempts State law "when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively * * * or when state law is in actual conflict with federal law" *(Freightliner Corp. v Myrick, supra,* 514 US, at 287; *see also, Guice v Charles Schwab & Co.,* 89 NY2d 31, 39, *cert denied* — US —, 117 S Ct 1250). Implied conflict preemption exists when it is impossible for a person to comply with both State and Federal requirements or when State law interferes with the accomplishment of Congress' objectives *(see, Guice v Charles Schwab & Co., supra).*

Where, as here, the language of the preemptive and savings clauses establish Congress' intent to exclude common-law

claims from the statute's preemptive reach, it is not necessary to consider implied preemption *(see, Wilson v Pleasant,* 660 NE2d 327 [Ind 1996]; *Tebbetts v Ford Motor Co., supra; see also, Cipollone v Liggett Group, supra).* Toyota's argument fails, in any event, because the savings clause and the legislative history establish that Congress did not consider it necessary, in order to accomplish its statutory objectives, to shield automobile manufacturers from State common-law tort claims. Moreover, a finding in the plaintiffs' favor that a driver's side air bag was a safer design alternative *(see, Voss v Black & Decker Mfg. Co.,* 59 NY2d 102, 109), would not conflict with Standard 208, which permits automobile manufacturers to choose among alternative passive restraint systems *(see, Wilson v Pleasant, supra).*

Accordingly, the order is reversed, insofar as appealed from, on the law, that branch of Toyota's motion which was for partial summary judgment dismissing the complaint to the extent that it alleged that Toyota was negligent in failing to supply a driver's side air bag is denied, and the complaint against Toyota is reinstated in its entirety.

PIZZUTO, J. (dissenting). The Federal law permits a manufacturer of automobiles to satisfy Federal passive restraint standards by the installation of air bags *or* other stated devices, such as specified types of seat belts (Federal Motor Vehicle Safety Standard No. 208; 49 CFR 571.208 [hereinafter Standard 208]). There is no allegation here that the respondents have failed to comply with these Federal standards. With regard to these standards, 49 USC § 30103 (b) states, in pertinent part: "Preemption. (1) When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard *applicable to the same aspect of performance of a mo-*tor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter". Subdivision (e) of 49 USC § 30103 states: "Common law liability. Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law".

The majority concludes that the term "standard" in the preemption clause "refers to specific statutory or regulatory enactments * * * and is more limited in scope than the word 'requirement' which has been construed to include state common-law duties" (231 AD2d 326, 329). There is no reason to

conclude that a standard is limited to governmental enactments.

In *Cipollone v Liggett Group* (505 US 504, 521), the Supreme Court found that an express preemption barring " 'requirement[s] or prohibition[s]' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules". The Court, after reaffirming that State regulation governing conduct and controlling policy can be as effectively asserted through common law as through official enactments, stated: " 'We must give effect to [the] plain language [of the preemption clause] unless there is good reason to believe Congress intended the language to have some more restrictive meaning' " *(Cipollone v Liggett Group, supra,* at 521, quoting *Shaw v Delta Air Lines,* 463 US 85, 97).

The plain meaning of the word "standard" in no way suggests the limited scope attributed to it by the majority *(see,* Black's Law Dictionary 1404 [6th ed 1990]; Webster's New Collegiate Dictionary 1125 [1981]). Also, while it is true that "Congress could have explicitly included State common law in the preemption clause" (231 AD2d 326, 329), it is equally true that Congress could have explicitly limited the preemption clause to "statutory or regulatory enactments" (231 AD2d 326, 329), if that was its intent. It is noteworthy that, just as in this case, no explicit mention was made of the common law in the preemptive language involved in cases which found "requirements" and "prohibitions" to include preemption of certain common-law claims *(see, e.g., Cipollone v Liggett Group, supra; Warner v American Fluoride Corp.,* 204 AD2d 1). Furthermore, the purposes of the Federal standards support the conclusion that Congress intended to preempt the entire field of State control with regard to those aspects of motor vehicle safety standards covered by the Federal regulations.

The majority concludes apparently that the sole purpose of the standards promulgated by the National Highway Traffic Safety Administration is "to provide *minimum* standards for equipment performance" (231 AD2d 326, 328; emphasis in majority opn). In rejecting this very argument, the United States Court of Appeals for the First Circuit stated: "Although the standards are 'minimum' in the sense that a manufacturer may make a vehicle safer than required by federal law, the standards are not 'minimum' in relation to state law. Section 1392 (d) [now 49 USC § 30103 (b)] provides that states are

forbidden from establishing standards not 'identical' to a federal standard. Thus section 1392 preempts state standards which are either more or less stringent than the federal standard" *(Wood v General Motors Corp.,* 865 F2d 395, 414, *cert denied* 494 US 1065). Even the majority's interpretation of the preemption language—that it bars "specific statutory or regulatory enactments" (231 AD2d 326, 329)—by necessary implication recognizes that the creation of minimum standards cannot be the sole purpose behind the Federal statute, since States are barred from, at least, enacting statutes or regulations with more stringent standards than those Federally imposed.

In addition to setting certain minimum standards, it is clear that Congress was concerned with establishing *uniformity* of the safety standards *(see, Harris v Ford Motor Co.,* 110 F3d 1410; *Pokorny v Ford Motor Co.,* 902 F2d 1116, 1122, *cert denied* 498 US 853; S Rep No. 1301, 89th Cong, 2d Sess 12, reprinted in 1966 US Code Cong & Admin News 2709, 2720). Additionally, "[i]n light of the history of this safety standard, it is indisputable that flexibility and choice are essential elements of the regulatory framework established in Standard 208" *(Harris v Ford Motor Co., supra,* at 1412; *Pokorny v Ford Motor Co., supra,* at 1123; *Taylor v General Motors Corp.,* 875 F2d 816, 827, *cert denied* 494 US 1065; *Panarites v Williams,* 216 AD2d 874). Varied State regulations, which could require certain types of safety devices not required by Federal standards, would frustrate the goals of uniformity and flexibility. Such regulations are as effectively exerted through the common law as by statutory and regulatory enactment *(see, Cipollone v Liggett Group, supra,* at 521; *San Diego Bldg. Trades Council v Garmon,* 359 US 236, 247; *Warner v American Fluoride Corp., supra).* Thus, given the purposes of the Safety Act, the plain language of the preemption clause, and the lack of any indication that Congress intended the word "standard" to be interpreted more restrictively than its plain meaning, it seems clear that common-law claims based on the same aspect of performance of the motor vehicle as that covered by the Federal standards, but which would impose a more restrictive standard than the Federal regulations, are expressly preempted.

The present claim is also impliedly preempted. The majority correctly notes that implied Federal preemption exists "when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively * * * or when state law is in

actual conflict with federal law" *(Freightliner Corp. v Myrick,* 514 US 280, 287). However, such implied conflict preemption has been found "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' " *(Freightliner Corp. v Myrick, supra,* 514 US, at 287, quoting *Hines v Davidowitz,* 312 US 52, 67). When a State's regulation, through the imposition of common-law tort liability, inhibits a Federal administrative agency from regulating "comprehensively and with uniformity in accordance with the objectives of Congress", then the State law may be impliedly preempted, even where an actual conflict between the federal and State laws " 'may not be an inevitable consequence' " *(Guice v Charles Schwab & Co.,* 89 NY2d 31, 47, *cert denied* — US —, 117 S Ct 1250; *see also, Schneidewind v ANR Pipeline Co.,* 485 US 293, 310). Thus, even if a common-law standard which requires air bags would not *necessarily* conflict with Standard 208, which permits air bags, the imposition of such common-law tort liability would conflict with the execution of the full purposes and objectives of Congress, which sought to establish uniformity of standards and to allow manufacturers flexibility in meeting those standards. Such a common-law claim is, therefore, impliedly preempted *(see, Harris v Ford Motor Co., supra; Pokorny v Ford Motor Co., supra; Kitts v General Motors Corp.,* 875 F2d 787, *cert denied* 494 US 1065; *Taylor v General Motors Corp., supra; Wood v General Motors Corp.,* 865 F2d 395, *cert denied* 494 US 1065, *supra).*

Finally, the savings clause of 49 USC § 30103 (e) does not require a different result. "Proceeding, as we must, upon the assumption that [Congress] did not deliberately place in the statute a phrase which was intended to serve no purpose" *(People v Dethloff,* 283 NY 309, 315; *see also, People ex rel. Powott Corp. v Woodworth,* 260 App Div 168, 172; *United States v Menasche,* 348 US 528, 538-539), the savings clause must be read in a manner which would not obliterate the effect of the preemption clause, which was meant to have some "restrictive significance" *(Reiter v Sonotone Corp.,* 442 US 330, 339). To read the savings clause as permitting the creation of common-law standards different from the Federal standards, with regard to the same aspect of performance of the motor vehicle as that covered by the Federal standards, as the majority does, would render the practical effect of the preemption clause all but illusory. Thus, to give practical effect to the preemption clause, it is necessary to read the savings clause as meaning that "compliance with the federal standards does not protect

an automobile manufacturer from liability for design or manufacturing defects in connection with matters not covered by the federal standards" *(Cox v Baltimore County,* 646 F Supp 761, 764). The savings clause, therefore, does not permit the common-law suit here, which is based on the same matters covered by the Federal standards.

FRIEDMANN and GOLDSTEIN, JJ., concur with O'BRIEN, J. P.; PIZZUTO and THOMPSON, JJ., dissent in a separate opinion by PIZZUTO, J.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, that branch of the motion of the defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Distributors, Inc., which was for partial summary judgment dismissing the complaint to the extent that it alleged that they were negligent in failing to supply a driver's side air bag is denied, and the complaint against those defendants is reinstated in its entirety.