No. 96-531

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

THOMAS P. McALPINE and RUBY McALPINE,
husband and wife, and SIMMES BROTHERS,
a partnership,

Plaintiffs and Appellants,

v.

RHÔNE-POULENC AG CO. and
BEN TAYLOR, INC., a Montana corporation,

Defendants and Respondents.

FILED

OCI 29 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Ninth Judicial District,
                In and for the County of Toole,
                The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Dan L. Spoon, John R. Gordon and Robert T. Bell (argued); Reep, Spoon &
                Gordon, Missoula, Montana

        For Respondents:

                William O. Bronson (argued); James, Gray, Bronson & Swanberg, Great
                Falls, Montana (for Rhône-Poulenc Ag Company)

                Neil E. Ugrin and Roger T. Witt (argued); Ugrin, Alexander, Zadick &
                Higgins, Great Falls, Montana (for Ben Taylor, Inc.)

Argued: August 19, 1997
Submitted: September 4, 1997
Decided: October 29, 1997

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Appellants Thomas P. and Ruby McAlpine, husband and wife, and Simmes Brothers, a partnership, appeal the order of the Ninth Judicial District Court, granting summary judgment in favor of Respondents Rhône-Poulenc Ag. Company (Rhône-Poulenc) and Ben Taylor, Inc. (Ben Taylor) and dismissing their amended complaint with prejudice. We affirm in part, reverse in part, and remand.

We address whether the Appellants' claims of negligence, breach of warranty, and strict liability are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).

## Factual and Procedural Background

The Appellants are farmers near Sunburst, Montana. Rhône-Poulenc and Ben Taylor are the manufacturer and distributor, respectively, of a herbicide called "Weedone LV6." In May 1990, the Appellants mixed Weedone LV6 according to the instructions provided by Rhône-Poulenc and Ben Taylor and applied it to their barley and spring wheat. For several weeks after Appellants applied the herbicide to their crops, the nighttime temperatures in Sunburst were near freezing. Soon after, Appellants discovered that their crops had been severely damaged. Appellants were informed by experts from Montana State University and the Montana Department of Agriculture that cool or cold temperatures following the application of Weedone LV6 can cause crop damage.

2

In July 1992, Appellants filed a complaint stating claims for negligence, breach of warranty, and strict liability. In December 1992, Appellants amended their complaint to plead damages with more specificity. Appellants' amended complaint alleged that Rhône-Poulenc and Ben Taylor were negligent in manufacturing, advertising, and selling Weedone LV6, a product they knew or should have known would be applied in cool, spring temperatures typical in Montana and, thus, a product that would cause crop damage even when applied according to its own instructions. They also alleged that Rhône-Poulenc and Ben Taylor negligently failed to warn them of the damage that could result from Weedone LV6.

Appellants' claims for breach of express and implied warranties are based on representations allegedly made by an employee of Ben Taylor that, if applied according to its directions, Weedone LV6 would control weeds. Appellants assert that Rhône-Poulenc and Ben Taylor carelessly and negligently designed, manufactured, sold and delivered a deficient product, which caused their crops to be damaged. Under strict liability, Appellants claim that Weedone LV6's performance in cold temperatures shows it is an unreasonably dangerous product.

Both Rhône-Poulenc and Ben Taylor filed motions for summary judgment, arguing that FIFRA expressly preempts states from imposing independent labeling requirements on pesticides and that because all of Appellants' claims are based on deficiencies in Weedone LV6's label, they are barred by FIFRA. The District Court granted summary judgment and

dismissed Appellants' amended complaint with prejudice. The court held that each of Appellants' claims presented a state law challenge to Weedone LV6's label and was therefore preempted.

## Standard of Review

This Court reviews a district court's grant of summary judgment de novo. Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. Thus, we proceed to determine whether any genuine issues of fact exist and whether the movant is entitled to summary judgment as a matter of law. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

## Discussion

### I. Scope of FIFRA Preemption

Under the Supremacy Clause of the Constitution, the laws of the United States are "the supreme Law of the Land." U.S. Const., art. VI, cl. 2. Thus, where a state law or constitution conflicts with federal law or where it is the clear and manifest intent of Congress, state law is preempted. Cipollone v. Liggett Group, Inc. (1992), 505 U.S. 504, 112 S.Ct 2608, 120 L.Ed.2d 407. Congressional intent to preempt may be found in the express language of the statute or where federal law so occupies an entire field "as to make reasonable the inference that Congress left no room for the States to supplement it." Cipollone, 505 U.S. at 516 (quoting Fidelity Federal Sav. & Loan Assn. v. de la Cuesta (1982), 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 675).

4

When first enacted in 1947, FIFRA was primarily a licensing and labeling statute. Wisconsin Public Intervenor v. Mortier (1991), 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532. In 1972, FIFRA was substantially amended by the Federal Environmental Pesticide Control Act and currently provides a comprehensive scheme for regulation of the use, sale, and labeling of pesticides. See 7 U.S.C. §§ 136-136y. The section at issue here, 7 U.S.C. § 136v, states:

> (a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
>
> (b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

The congressional intent to preempt is clearly found in the express language of § 136v and, thus, need not be inferred. However, FIFRA still leaves open a substantial portion of the field of pesticide regulation. Mortier, 501 U.S. at 613. In this case, while the parties agree that this statute preempts state law claims based exclusively on omissions or inclusions in the product label, they dispute whether Appellants have, in fact, pled claims that extend beyond the scope of this FIFRA preemption.

In Cipollone, 505 U.S. at 504, the Supreme Court addressed a nearly identical preemption question in the context of cigarette labeling regulation. Rose Cipollone began smoking in 1942 and died of lung cancer in 1984. Cipollone, 505 U.S. at 508. The plaintiff, Rose's son, claimed that the Liggett Group caused his mother's death by failing to provide

adequate warnings on its cigarettes and by misrepresenting the dangers of smoking to the public. Cipollone, 505 U.S. at 508. The Public Health Cigarette Smoking Act of 1969 states that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334. The Supreme Court held that the phrase "requirement or prohibition" included state common law damage actions as well as positive legislative or administrative enactments. Cipollone, 505 U.S. at 522.

The Court went on to consider whether the plaintiff's claims were within the domain expressly preempted by 15 U.S.C. § 1334. Cipollone, 505 U.S. at 523. The plaintiff had alleged two claims based on failure to warn: 1) that Liggett Group was negligent in the manner of testing, researching, selling, promoting, and advertising its cigarettes; 2) that Liggett Group failed to provide adequate warnings of the health consequences of cigarette smoking. Cipollone, 505 U.S. at 524. The Court held:

> insofar as claims under either failure to warn theory require a showing that [Liggett Group's] advertising or promotions should have included additional, or more clearly stated, warnings, those claims are preempted. The Act does not, however, pre-empt petitioner's claims that rely solely on respondents' testing or research practices or other actions unrelated to advertising or promotion.

Cipollone, 505 U.S. at 524.

The plaintiff had also alleged a breach of warranty claim, based largely on statements in the Liggett Group's cigarette advertisements. The Court held that the common law remedy

for breach of a voluntary, contractual commitment should not be regarded as a requirement imposed under state law. Cipollone, 505 U.S. at 526. Thus, the Court held that plaintiff's claims based on breach of warranties found in the cigarette advertisements were not preempted. Cipollone, 505 U.S. at 526-27.

All of the circuit courts, and several state supreme courts, that have considered the effect of FIFRA's preemption clause have concluded that it should be given the same effect as the preemption clause interpreted in Cipollone. See, e.g., Taylor Ag. Indus. v. Pure-Gro (9th Cir. 1995), 54 F.3d 555; Welchert v. American Cyanamid, Inc. (8th Cir. 1995), 59 F.3d 69; Worm v. American Cyanamid Co. (4th Cir. 1993), 5 F.3d 744; Shaw v. Dow Brands, Inc. (7th Cir. 1993), 994 F.2d 364; Clubine v. American Cyanamid Co. (Iowa 1995), 534 N.W.2d 385; Quest Chemical Corp. v. Elam (Texas 1995), 898 S.W.2d 819; Hue v. Farmboy Spray Co., Inc. (Wash. 1995), 896 P.2d 682. Further, in vacating the judgments of two circuit courts that held that FIFRA impliedly preempted state law claims based on failure to warn, the U.S. Supreme Court remanded, asking those courts to reconsider in light of its decision in Cipollone. See Arkansas-Platte & Gulf Partnership v. Dow Chemical Co. (1992), 506 U.S. 910, 113 S.Ct. 314, 121 L.Ed.2d 235; Papas v. Zoecon Corp. (1992), 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892. Thus, for purposes of determining the scope of FIFRA preemption, Cipollone provides the appropriate framework for our analysis.

Under FIFRA, a "State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."

7

7 U.S.C. § 136v(b). We determine that, as in the cigarette labeling statute, the phrase "requirement" in 7 U.S.C. § 136v(b) includes state common law damage actions. Therefore, FIFRA preempts state tort claims to the extent they arise from an omission or inclusion in the product's label. Claims alleging a product, manufacturing or design defect, claims alleging negligent design, testing or manufacturing, or claims alleging breach of warranty that do not rely on such an omission or inclusion in the product's label are not preempted. Thus, the issue before this Court is whether the Appellants have in fact made allegations in their amended complaint that support nonpreempted claims of the type listed above.

II. Claims Set Forth in Appellants' Amended Complaint

A. Negligence

The District Court found that Appellants' negligence claim was based solely on the insufficiency of Weedone LV6's label. The District Court held that despite Appellants' characterization of their claims as *negligent* formulation, manufacture, and design, "the essence of the claim is still that Defendants designed, manufactured and sold a product in Montana which it should not have, despite the fact that the product and product label received EPA approval prior to its entry into the stream of commerce." In so holding, the court cited Appellants' response to an interrogatory propounded them by Ben Taylor, which asked them to set forth the basis for each of their claims:

> We believe the evidence will show that the application instructions and label
> for the defendants' product do not specifically advise of the risk or

8

consequences to treated crops caused by the onset of cool or cold weather before and after application. Further, that defendants knew that the product would be used in northern Montana where there is a substantial likelihood of cool or cold weather occurring in May and June when spring wheat and barley reach the appropriate stage for application, and that its use under those conditions created an unreasonable risk of substantial damage and regardless defendants marketed the product to plaintiffs. Defendants knew that plaintiffs would rely on the representations contained in their advertising, the statements of their dealers and the product label in purchasing and using the product. Defendants knew or should have known that such representations were incorrect, inadequate and misleading. Plaintiffs did in fact rely on those incorrect, inadequate and misleading representations in purchasing and using the product and were damaged as a result.

Appellants argue that the District Court erred by looking only to one interrogatory response and by ascribing an overly narrow reading to the language of their amended complaint, which they argue clearly alleges that the product is defective regardless of its labeling. Whether or not the District Court overstated the importance of Appellants' interrogatory response, it correctly found that the negligence claim set forth in Appellants' amended complaint was based solely on the insufficient warning contained in Weedone LV6's label.

In the first count of their amended complaint, Appellants claim that Rhône-Poulenc and Ben Taylor had a duty to warn or advise them of the potential risks posed by Weedone LV6. Appellants argue that in selling and advertising Weedone LV6 in Sunburst, Montana, Rhône-Poulenc and Ben Taylor should have known that any farmer who applied Weedone LV6 according to the directions would apply it in May and June, months in which cool or cold temperatures are common. Thus, Appellants contend that Rhône-Poulenc and Ben

9

Taylor "owed a duty to [Appellants] to advise them of the substantial risk of harm which would occur if cool or cold temperatures occurred after application of Weedone LV6 to their small grain crops; and their failure to perform that duty constitutes negligence."

The only theory of negligence set forth in Appellants' amended complaint is premised on Rhône-Poulenc and Ben Taylor's and failure to warn adequately of the harm that could result from using Weedone LV6. To succeed under this theory of negligence, Appellants would be required to show that Weedone LV6's label was deficient; that is, that Ben Taylor and Rhône-Poulenc should have included "additional, or more clearly stated, warnings. . . ." Cipollone, 505 U.S. at 524. Such claims are preempted by FIFRA. We affirm the District Court's grant of summary judgment in favor of Ben Taylor and Rhône-Poulenc on Appellants' negligence claims.

B. Breach of Express and Implied Warranty

The Appellants claim that an agent of Ben Taylor represented to them that Weedone LV6, if applied as directed, would control the weeds in their spring wheat and barley. Appellants argue that their crop damage was caused by the product's failure to serve the purpose for which it was intended and that such failure "was due to a mistake or deficiency in the design, formula, plan and specification of the product."

FIFRA does not preempt breach of warranty claims that fall outside the scope of the manufacturer's label. Cipollone, 505 U.S. at 526; Taylor Ag. Indus., 54 F.3d at 563. Here, Appellants' amended complaint alleges that Rhône-Poulenc and Ben Taylor breached their

10

warranty by designing, manufacturing, and marketing a product that was inherently defective. The District Court found, as a matter of law, that they had not stated a claim for which relief can be granted. However, the pleadings clearly state claims that are unrelated to the product's label. For example, Appellants claim that when they purchased Weedone LV6, an agent of Ben Taylor "represented the product to be of such nature as to control the weeds in [their] fields," and that the product failed to do so. Therefore, to the extent they do not rely on representations made in the product label and to the extent they actually allege breach of warranty, Appellants' claims for breach of express and implied warranty are not preempted.

C. Strict Liability

Under strict liability, Appellants allege that they suffered damage as a result of Rhône-Poulenc and Ben Taylor's failure to warn that Weedone LV6 could damage crops if applied in cool weather. Again, to the extent Appellants' claims rely on the insufficiency of the product label, they are preempted. However, Appellants also incorporate by reference the claims set forth under breach of warranty; i.e., that the failure of Weedone LV6 was "due to a mistake or deficiency in the design, formula, plan and specifications of the product." Appellants also claim that they "suffered damage to their property as a result of the unreasonably dangerous product sold them by Defendants and that Defendants are strictly liable for that damage."

11

In its order dismissing all of Appellants' claims, the District Court noted that, in registering Weedone LV6 and approving its label, the Environmental Protection Agency (EPA) had necessarily concluded that the product, its testing, and its labeling were reasonable and appropriate when the product was used in accordance with widespread and commonly recognized practice. However, as the U.S. Supreme Court has recognized, EPA approval of a pesticide does not necessarily indicate approval for application in all locations and in all climates:

> FIFRA nonetheless leaves substantial portions of the field vacant, including the area at issue in this case. FIFRA nowhere seeks to establish an affirmative permit scheme for the actual use of pesticides. It certainly does not equate registration and labeling requirements with a general approval to apply pesticides throughout the Nation without regard to regional and local factors like climate, population, geography, and water supply. Whatever else FIFRA may supplant, it does not occupy the field of pesticide regulation in general or the area of local use permitting in particular.

Mortier, 501 U.S. at 613-14.

We conclude, likewise, that FIFRA does not supplant state tort law in protecting persons or property from damages resulting from the application of pesticides. Compliance with FIFRA does not exempt pesticide manufacturers and distributors from their duties to avoid marketing products with manufacturing defects or to use demonstrably safer designs for products. Thus, Appellants must be given the opportunity to prove that Rhône-Poulenc and Ben Taylor are strictly liable for designing, manufacturing, and marketing an unreasonably dangerous product. Such claims do not fall within FIFRA's preemptive scope.

12

Rhône-Poulenc also argues that, to the extent Appellants have pled claims unrelated to the insufficiency of the product's label, they did not offer the District Court any evidence to defeat summary judgment on such claims. While we agree that the record before us does not contain facts sufficient to defeat summary judgment, Appellants have not been given the opportunity to conduct thorough discovery. For example, in response to several of Appellants' written interrogatories, Rhône-Poulenc refused to answer, concluding that "[Appellants'] claims are preempted under federal law." Rhône-Poulenc then sought summary judgment on the legal issue of FIFRA preemption. In granting summary judgment, the District Court did not address any of the factual merits of Appellants' claims, but ruled solely as a matter of law that all claims were preempted. We determine that the District Court's grant of summary judgment foreclosed Appellants' opportunity to obtain complete discovery. Until Appellants have completed their discovery, it would be premature for us to conclude that their evidence is insufficient.

Based on the foregoing, we affirm the District Court's holding that the claims of negligence set forth in Appellants' amended complaint are preempted by FIFRA. However, we reverse and remand to allow Appellants to go forward with their claims of breach of warranty and strict liability to the extent they do not rely on representations made in the product's label.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

W. William Bingham
Justice

13

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

14