[676 NYS2d 658]

MARCUS MANN, Appellant, v H.W. ANDERSEN PRODUCTS, INC., Respondent, et al., Defendant.

Second Department, August 10, 1998

## APPEARANCES OF COUNSEL

*Antin & Ehrlich,* New York City (*Jeffrey S. Antin* of counsel), for appellant.

*Furey & Furey, P. C.,* Hempstead (*Susan W. Darlington* of counsel), for respondent.

## OPINION OF THE COURT

ROSENBLATT, J. P.

In his complaint, the plaintiff seeks to hold the defendant H.W. Andersen Products, Inc. (hereinafter Andersen) liable for physical deformities with which he was born. While pregnant, his mother was employed at the Andersen facility where she allegedly worked directly with, and was exposed to, ethylene oxide, which Andersen used in producing a product known commercially as Anprolene.

The principal question before us is whether and to what extent the plaintiff's tort causes of action are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (7 USC § 136 *et seq.* [hereinafter FIFRA]).

Andersen has been in the business of packaging, distributing, and selling Anprolene, a gas used to sterilize medical supplies, of which ethylene oxide is the active ingredient. The ethylene oxide was manufactured by Union Carbide Corporation (hereinafter Union Carbide), which sold it to Andersen as Oxyfume 12. Product labels and tags for both Oxyfume 12 and Anprolene were approved by the United States Department of Agriculture, and registered with the United States Environmental Protection Agency under the authority of FIFRA. The warning label on Union Carbide's Oxyfume 12 included the following: "Harmful if inhaled. Causes eye and skin burns. Suspect cancer hazard". The label further stated: "Do not breath gas. Do not get in eyes, on skin, or clothing. Store and use with adequate ventilation".

The plaintiff's mother worked in Andersen's plant in Oyster Bay, Long Island, at a machine that poured the ethylene oxide into small bottles, which she capped. She asserts that her job required her to handle ethylene oxide for approximately four

hours a day, five days a week. She alleges that she was not provided with goggles, gloves, a face mask, or other protective clothing, nor, she claims, was there ventilation in the room where she worked. She asserts that after a few months of this work, she asked to be moved to another position because she was feeling dizzy and had headaches. She claims that her employers "never told [her] of any health risks or hazards [she] might be exposed to while working with Ethylene Oxide", and that she "never saw, nor was [she] made aware of any of the labels and/or packaging in which [Andersen] received the ethylene oxide nor were any placed on it by [her] or while it was in [her] possession". She also states that it was only after she stopped working there that she became aware of the dangers associated with exposure to ethylene oxide.

At an earlier stage in this litigation Union Carbide sought and won summary judgment from the Supreme Court on the ground that the plaintiff's causes of action based on the defendants' "failure to label" were preempted by FIFRA. Andersen also sought summary judgment on the same ground, and we addressed that issue on Andersen's prior appeal from the Supreme Court's denial of its motion. On that appeal, however, we were presented with a narrow question, as limited by the parties' arguments before the Supreme Court (*see, Mann v Andersen Prods.*, 231 AD2d 500). The sole issue then before us was whether the plaintiff's cause of action to recover damages for "failure to label" was preempted by FIFRA. We held that insofar as the plaintiff's complaint may be read as including a cause of action against Andersen based on "failure to label", that cause of action was preempted by FIFRA. We did not, however, determine whether, apart from its "failure to label" component, the plaintiff's complaint against Andersen survives FIFRA preemption. We do so now.

The primary thrust of the plaintiff's allegations against Andersen is not based upon a failure to label. The allegations rest, in the main, on a broader basis: the plaintiff claims that Andersen, with knowledge of the hazards of ethylene oxide, acted negligently toward him in exposing his mother to the chemical while he was in utero. He claims, in essence, that Andersen, in producing Anprolene, failed to take proper precautions to protect his mother and, in turn, protect him, in utero, against ethylene oxide exposure at the Andersen facility, and that it failed to warn his mother of the hazards of working with ethylene oxide.

We stress that we address the plaintiff's claim as a pleading, and in the context of a motion for summary judgment. At this

stage of the action we have no basis, to make any determination as to the conditions or protections at the Andersen facility, or as to the plaintiff's allegations pertaining to Andersen's knowledge or conduct. Those allegations and the issues relating to the presence or absence of foreseeability, exposure, causation, notice and, no doubt, other considerations that underlie whether the plaintiff will be able to prove his case—we do not attempt to list them all—involve factual questions that may not be determined on this motion for summary judgment.

In urging FIFRA preemption, Andersen relies heavily on our decision in *Warner v American Fluoride Corp.* (204 AD2d 1). In *Warner,* the plaintiff was a former New York City correction officer who alleged that for a number of years he was exposed to several pesticides that had been sprayed at the Riker's Island and Hart's Island prison facilities, where he had worked. Claiming that he developed toxic neuropathy as a result of the exposure, he sued the manufacturers. In an opinion authored by Justice Krausman, this Court held that FIFRA expressly preempted Warner's causes of action against the manufacturers "to the extent that they are premised on the adequacy of pesticide warning labels" (*Warner v American Fluoride Corp., supra,* at 3).

The *Warner* holding does not support Andersen's position on this appeal. The complaint in *Warner* was directed solely at the manufacturers, who relied successfully on the FIFRA labeling preemption. Although Union Carbide fits fully within the *Warner* holding and the FIFRA labeling preemption, we conclude, for reasons to follow, that Andersen does not.

The scope of Federal preemption under FIFRA and comparable Congressional enactments has varied under State and Federal decisional law, but even the most extreme application of preemption would not go so far as to preempt any and all State tort actions relating to substances subject to regulation under FIFRA regardless of the plaintiff's theory or the alleged role of the defendant (*see, Cipollone v Liggett Group,* 505 US 504, 523).

Before *Cipollone* was decided, there was considerable disagreement among courts as to whether FIFRA impliedly preempted State tort actions for inadequate labeling (*see, Warner v American Fluoride Corp., supra,* at 7; *see also,* Note, *Preemption Doctrine After Cipollone—Nevada Supreme Court Holds that the Federal Insecticide, Fungicide, and Rodenticide Act Impliedly Preempts State Common-Law Actions Based on Inadequate Labeling,* 106 Harv L Rev 963 [1993]). After *Cipol-*

*lone v Liggett Group (supra),* however, and with subtle varia-
tions not relevant to our case, both State and Federal courts
have held, as did our Court in *Warner v American Fluoride
Corp. (supra),* that a plaintiff's causes of action, to the extent
that they are premised upon failure to warn and inadequate
warning labels, must be dismissed as preempted by FIFRA
(*see, e.g., Hottinger v Trugreen Corp.,* 665 NE2d 593 [Ind];
*Banks v ICI Americas,* 264 Ga 732, 450 SE2d 671; *Schuver v
Du Pont de Nemours & Co.,* 546 NW2d 610 [Iowa], *cert denied*
519 US 910; *Hochberg v Zoecon Corp.,* 421 Mass 456, 657 NE2d
1263; *Moody v Chevron Chem. Co.,* 201 Mich App 232, 505
NW2d 900; *Ackles v Luttrell,* 252 Neb 273, 561 NW2d 573, *cert
denied* — US —, 118 S Ct 329; *Hopkins v Ciba-Geigy Corp.,*
111 NC App 179, 432 SE2d 142; *Rodriguez v American Cyana-
mid Co.,* 116 F3d 485; *Grenier v Vermont Log Bldgs.,* 96 F3d
559; *Lowe v Sporicidin Intl.,* 47 F3d 124; *Bice v Leslie's
Poolmart,* 39 F3d 887).

In decisions compatible with the label-based preemption doc-
trine, courts have rejected preemption when the plaintiff's
claim is founded, for example, on breach of express warranty,
in that a manufacturer who expressly and voluntarily war-
rants its product beyond what FIFRA mandates, undertakes a
contractual-type commitment (*see, e.g., ISK Biotech Corp. v
Douberly,* 640 So 2d 85 [Fla]; *Walker v American Cyanamid
Co.,* 130 Idaho 824, 948 P2d 1123; *Hopkins v American Cyana-
mid Co.,* 666 So 2d 615 [La]). Other claims that have escaped
preemption are those based on negligent testing (*see, e.g., Worm
v American Cyanamid Co.,* 5 F3d 744; *Clubine v American Cy-
anamid Co.,* 534 NW2d 385 [Iowa]; *McAlpine v Rhone-Poulenc
Ag. Co.,* 285 Mont 224, 947 P2d 474) or defective design (*see,
e.g., Kawamata Farms v United Agri Prods.,* 86 Haw 214, 948
P2d 1055; *Didier v Drexel Chem. Co.,* 86 Wash App 795, 938
P2d 364; *see generally,* Annotation, *Federal Pre-Emption of
State Common-Law Products Liability Claims Pertaining to
Pesticides,* 101 ALR Fed 887). Furthermore, FIFRA expressly
reserves to States the right to impose regulations on the sale
and use of pesticides (7 USC § 136v [a]) to the extent such
regulations are not inconsistent with the Federal requirements
(*see also, Wisconsin Pub. Intervenor v Mortier,* 501 US 597;
*New York State Pesticide Coalition, Inc. v Jorling,* 874 F2d
115).

In addition to *Warner v American Fluoride Corp. (supra),*
other New York decisions have similarly recognized the differ-
ence between label-based preemption (*June v Laris,* 205 AD2d

166; *Sirico v Beckerle Lbr. Supply Co.,* 227 AD2d 396) and causes of action that have survived preemption challenges, as in the case of an alleged design defect (*Babalola v Chrystal Chems.,* 225 AD2d 370) or alleged negligent testing, manufacturing, and formulating (*Wallace v Parks Corp.,* 212 AD2d 132, 137).

Although the plaintiff's complaint charges Andersen with the failure to "warn", it is not the type of warning claim that falls within FIFRA preemption. There are failures to warn and there are failures to warn. One type of warning, the kind contemplated in the typical FIFRA preemption case, involves a defense by the manufacturer that product labeling in compliance with FIFRAwill preempt a State tort claim based on an alleged failure to warn. That type of warning, by labeling, is designed to protect the consumer, or end user, from the possibly harmful effects of the substances regulated by FIFRA (*see, Chemical Specialities Mfrs. Assn. v Allenby,* 958 F2d 941, *cert denied sub nom. Chemical Specialties Mfrs. Assn. v Book,* 506 US 825; Howarth, *Preemption and Punitive Damages: The Conflict Continues Under FIFRA,* 136 U Pa L Rev 1301, 1320-1325 [1988]).

The case before us involves a very different type of warning. It relates, as alleged in the complaint, to a defendant's alleged failure to caution and protect a workplace employee and, in turn, her fetus, from the dangers of exposure to the raw material itself, when the employee handles it before it is packaged for sale and distribution by the defendant. It is a concern directed toward the handling of the product by an employee in the workplace environment, as opposed, for example, to the consumer who may rely on proper warning labels before using the product. For these reasons, we disagree with Andersen's preemption argument.

In a number of instances, injuries sustained by a fetus were held actionable in tort (*see, e.g., Kaplowitz v Borden, Inc.,* 189 AD2d 90; *Utter v South Brookhaven Obstetric & Gynecologic Assocs.,* 135 AD2d 811; *Kelly v Gregory,* 282 App Div 542). Andersen, however, argues that the plaintiff was not harmed in utero, but, rather, that his condition was genetically predetermined before he was conceived, which would render his claim a legally untenable preconception tort (*see, Albala v City of New York,* 54 NY2d 269). Andersen, on this point, has presented cogent and compelling expert submissions as to a genetically predetermined condition. While that evidence may eventually carry the day, the plaintiff has presented expert

submissions sufficient to preclude us from now making such a determination as a matter of law.

On the state of the record before us, we conclude that the complaint withstands Andersen's FIFRA challenge and that there are factual issues warranting the denial of Andersen's motion for summary judgment. Accordingly, the order and judgment must be reversed, Andersen's motion denied, and the complaint reinstated insofar as asserted against it.

MILLER, THOMPSON and SANTUCCI, JJ., concur.

Ordered that the order and judgment is reversed, with costs, the motion for summary judgment is denied, and the complaint is reinstated insofar as asserted against the defendant H.W. Andersen Products, Inc.