No. 98-678

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 383

304 Mont. 31

16 P. 3d 1054

THOMAS P. McALPINE and

RUBY McALPINE, husband and

wife, and SIMMES BROTHERS,

a partnership,

Plaintiffs and Appellants,

v.

RHONE-POULENC AG COMPANY,

Defendant and Respondent.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Toole,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Robert T. Bell, John R. Gordon, Reep, Spoon & Gordon, Missoula, Montana

For Respondent:

William O. Bronson, Smith, Walsh, Clarke & Gregoire, Great Falls, Montana

Submitted on Briefs: September 9, 1999
Decided: December 28, 2000

Filed:

_____

Clerk


Justice James C. Nelson delivered the Opinion of the Court.

¶1 Plaintiffs Thomas and Ruby McAlpine and Simmes Brothers (collectively referred to as "the McAlpines") brought this action against Rhone-Poulenc Ag Company (Rhone-Poulenc) for damages the McAlpines sustained to their crops after applying a herbicide manufactured by Rhone-Poulenc. The District Court for the Ninth Judicial District, Toole County, granted summary judgment in favor of Rhone-Poulenc. On appeal, we held that because the McAlpines' negligence claim was based solely on insufficient warnings in the herbicide's label, that claim was preempted by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), but the McAlpines' claims of breach of warranty and strict liability were not preempted by FIFRA to the extent that those claims did not rely on representations made in the herbicide's label. *See McAlpine v. Rhone-Poulenc Ag. Co.* (1997), 285 Mont. 224, 947 P.2d 474. Following that appeal, the McAlpines proceeded to trial against Rhone-Poulenc on a theory of strict products liability. The jury returned a verdict in favor of Rhone-Poulenc and the McAlpines appealed. We reverse and remand for further proceedings consistent with this opinion.

¶2 We address the following issues on appeal:

¶3 1. Whether the District Court erred in instructing the jury that it must find that the herbicide was in a "defective condition unreasonably dangerous" rather than instructing that it must find that the herbicide was merely in a "defective condition."

¶4 2. Whether the District Court erred in refusing to allow the McAlpines to introduce evidence of the herbicide's label language after Rhone-Poulenc's witnesses violated a motion in limine by referencing product labeling during examination.

¶5 3. Whether FIFRA renders evidence of the herbicide's label inadmissible where the cold damage effects of the herbicide on crops are not regulated by FIFRA or the EPA.

## Factual and Procedural Background

¶6 The McAlpines are farmers in Sunburst, Montana, near the Canadian border. In May and June 1990, the McAlpines applied a herbicide known as Weedone LV6 to their barley and spring wheat crops. Weedone LV6 falls within a chemical family of herbicides manufactured by Rhone-Poulenc that are known as "phenoxys" or, generically, as 2,4-D. Rhone-Poulenc's authorized dealer, Ben Taylor, Inc., sold Weedone LV6 to the McAlpines. For several weeks after the McAlpines applied this herbicide to their crops, the night time temperatures fell to near freezing. Soon after, the McAlpines discovered that their crops had been severely damaged.

¶7 On July 1, 1992, the McAlpines filed a complaint against Rhone-Poulenc and Ben Taylor, Inc. alleging negligence, breach of express and implied warranties, and strict liability. The McAlpines argued that Rhone-Poulenc and Ben Taylor, Inc. were negligent for failing to advise the McAlpines of the substantial risk of harm if cool or cold temperatures occurred after application of Weedone LV6 to their crops; that they breached express and implied warranties because Weedone LV6 was not suitable and fit for the purposes for which it was sold and intended to be used; and that they were strictly liable for the McAlpines' damages because Weedone LV6 is a defective product as its propensity to damage or destroy crops in conjunction with cold weather is a danger outside the expectations of the ordinary consumer.

¶8 On April 4, 1996 and April 17, 1996, respectively, Rhone-Poulenc and Ben Taylor, Inc. filed Motions for Summary Judgment arguing that the McAlpines' claims are based upon allegedly inadequate pesticide labeling and as such are expressly preempted by FIFRA because FIFRA prohibits any state law requirements for labeling or packaging in addition to or different from those required by the EPA. The McAlpines filed their response on June 10, 1996, arguing that FIFRA preemption must be narrowly construed and limited to claims that are exclusively based upon omissions or inclusions in a product's label.

¶9 A hearing on this matter was conducted on July 31, 1996. The following day, the District Court filed its Order on Summary Judgment wherein it concluded that because the McAlpines' claims are all based on the alleged failure of Rhone-Poulenc and Ben Taylor, Inc. to adequately warn users of Weedone LV6 of the risk of using this product during cold temperatures, all of the McAlpines' causes of action are preempted under FIFRA. Consequently, the court granted Rhone-Poulenc's and Ben Taylor, Inc.'s Motions for Summary Judgment.

¶10 The McAlpines appealed the District Court's order to this Court. On October 29, 1997, we issued an opinion wherein we held that FIFRA preempts state tort claims to the extent they arise from an omission or inclusion in the product's label, but claims alleging a product, manufacturing, or design defect; claims alleging negligent design, testing, or manufacturing; or claims alleging breach of warranty that do not rely on such an omission or inclusion in the product's label, are not preempted. *See McAlpine*, 285 Mont. at 230, 947 P.2d at 477. Hence, we affirmed the District Court's ruling that the McAlpines' claims of negligence are preempted by FIFRA. However, we reversed and remanded to allow the McAlpines to go forward with their claims of breach of warranty and strict liability to the extent that they do not rely on representations made in the product's label. *McAlpine*, 285 Mont. at 234, 947 P.2d at 480.

¶11 On August 17, 1998, the McAlpines filed Alternative Motions in Limine wherein they moved the District Court for an order barring Rhone-Poulenc from introducing evidence or argument at trial suggesting that the McAlpines failed to comply with the label instructions for Weedone LV6 or, in the alternative, permitting both parties to introduce evidence and argument regarding the McAlpines' compliance or noncompliance with the product's label instructions. The District Court ultimately granted the motion by barring all parties from discussing or introducing evidence of the contents of the label.

¶12 Prior to trial, the McAlpines and Ben Taylor, Inc. reached a settlement agreement and all claims against Ben Taylor, Inc. were dismissed with prejudice. The McAlpines proceeded to trial against the remaining defendant, Rhone-Poulenc, on a theory of strict products liability.

¶13 At trial, the McAlpines claimed that Weedone LV6 was a defective product because its propensity to damage or destroy crops in conjunction with cold weather is a danger outside the expectations of the ordinary consumer. Both the McAlpines' expert witness and Rhone-Poulenc's expert witness testified that phenoxy herbicides like Weedone LV6

can cause crop damage when applied in a period of cold temperature. Rhone-Poulenc acknowledged that the crop damage was caused by the phenoxy herbicide, but they argued that such damage was not "unreasonably dangerous," and that it is only when a product is sufficiently dangerous that liability exists.

¶14 The jury returned a verdict in favor of Rhone-Poulenc and the McAlpines appealed.

## Issue 1.

¶15 *Whether the District Court erred in instructing the jury that it must find that the herbicide was in a "defective condition unreasonably dangerous" rather than instructing that it must find that the herbicide was merely in a "defective condition."*

¶16 A district court has discretion regarding the instructions it gives or refuses to give to a jury and we will not reverse a district court on the basis of its instructions absent an abuse of discretion. *Federated Mut. Ins. Co. v. Anderson*, 1999 MT 288, ¶ 44, 297 Mont. 33, ¶ 44, 991 P.2d 915, ¶ 44 (citing *Fillinger v. Northwestern* (1997), 283 Mont. 71, 76, 938 P.2d 1347, 1350-51). In reviewing whether a particular jury instruction was properly given or refused, we consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial. *Federated Mutual*, ¶ 44. The party assigning error to a district court's instruction must show prejudice in order to prevail. Prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. *Federated Mutual*, ¶ 44.

¶17 The jury instructions in question in this case are as follows:

> One who sells any product in a *defective condition unreasonably dangerous* is liable for property damage caused by the product to the ultimate user or consumer's property if the seller is engaged in the business of selling a product.
>
> This rule applies although the seller has exercised all possible care in the preparation and sale of its product and the user or consumer did not buy the product from or entered into any contractual relation with the seller.
>
> It is no defense for the Seller that the consumer assumed the risk of using the product.

Jury Instruction No. 11 (emphasis added).

> A product is in a "*defective condition unreasonably dangerous*" when the product is in a condition not contemplated by the consumer who purchases it, with the ordinary knowledge common to the community as to the product's characteristics.

Jury Instruction No. 12 (emphasis added).

¶18 The McAlpines argue that the District Court erred in instructing the jury that liability only exists where a given product is in a "defective condition unreasonably dangerous" because the "unreasonably dangerous" language is confusing, duplicative and should have been omitted. The McAlpines point out that these instructions deviate from the Montana Pattern Instructions used in strict products liability cases and that the omission of the "unreasonably dangerous" language in the MPI better reflects our decision in *McJunkin v. Kaufman & Broad Home Systems* (1987), 229 Mont. 432, 748 P.2d 910.

¶19 In *McJunkin*, the buyers of a mobile home brought suit against the manufacturer and the seller of the mobile home alleging various claims by reason of the numerous defects they discovered in the home after they moved in. Following a jury trial, the District Court entered judgment against the manufacturer on a claim of negligence and against the seller on a claim of negligent misrepresentation. On appeal, the buyer argued that the District Court erred in failing to instruct the jury on the theory of strict liability. *McJunkin*, 229 Mont. at 435-36, 748 P.2d at 912-13.

¶20 We held in *McJunkin* that a product is defective if it is unreasonably dangerous. *McJunkin*, 229 Mont. at 445, 748 P.2d at 918 (citation omitted). But, a plaintiff is not required to show that a product is defective and also that it is unreasonably dangerous because establishing that a product is unreasonably dangerous is merely a means of proving that it is defective. Quoting Keeton, *Product Liability and the Meaning of Defect*, 5 St. Mary's L.J. 30, 32 (1973), we noted:

> It is unfortunate perhaps that Section 402A of the *Restatement (Second) of Torts* provides that as a basis for recovery it must be found that the product was both "defective" and "unreasonably dangerous" when as a matter of fact the term "unreasonably dangerous" was meant only as a definition of defect. The phrase was not intended as setting forth two requirements but only one . . . .

*McJunkin, 229 Mont. at 443-44, 748 P.2d at 917. Thus, we concluded that the "defective*

*condition unreasonably dangerous" language creates a vague and imprecise dual test. McJunkin, 229 Mont. at 443-44, 748 P.2d at 917.*

¶21 The McAlpines point out that *McJunkin* was decided at a time when Montana utilized the common law test for strict products liability set forth in the *Restatement (Second) of Torts* § 402A (1965), and that the 1987 Legislature statutorily adopted the Restatement test by enacting § 27-1-719, MCA, which provides:

(1) As used in this section, "seller" means a manufacturer, wholesaler, or retailer.

(2) A person who sells a product in a defective condition unreasonably dangerous to a user or consumer or to the property of a user or consumer is liable for physical harm caused by the product to the ultimate user or consumer or to the user's or consumer's property if:

(a) the seller is engaged in the business of selling such a product; and

(b) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(3) The provisions of subsection (2) apply even if:

(a) the seller exercised all possible care in the preparation and sale of the product; and

(b) the user or consumer did not buy the product from or enter into any contractual relation with the seller.

(4) Subsection (2)(b) does not apply to a claim for relief based upon improper product design.

¶22 Rhone-Poulenc argues that *McJunkin* was decided upon the pre-statute common law of strict products liability and that the Legislature's enactment of § 27-1-719, MCA, supersedes the holding of *McJunkin*. The McAlpines argue, on the other hand, that the statute did not substantively change the test for determining when a product is defective, thus they maintain that the *McJunkin* holding continues to apply today.

¶23 We agree with the McAlpines that since *McJunkin* interpreted the *Restatement (Second) of Torts* § 402A, and since § 27-1-719, MCA, mirrors § 402A, *McJunkin*, in effect, interprets that statute as well. We conclude, as we did in *McJunkin*, that the "defective condition unreasonably dangerous" language creates a vague and imprecise dual test.

¶24 In *Busta v. Columbus Hosp. Corp.* (1996), 276 Mont. 342, 916 P.2d 122, we determined that legal concepts, which in that case included "proximate cause," "legal cause," and "reasonable foreseeability," should not be submitted to a lay jury because they can only serve to confuse jurors and distract them from deciding cases based on their merits. For that reason, we recommended that such terms are best left to arguments between attorneys for consideration by judges or justices. *Busta*, 276 Mont. at 371-72, 916 P.2d at 139-40. We pointed out that the only purpose which is properly served by the instructions to the jury is "to assure a decision consistent with the evidence and the law" and that this can only be accomplished "when the instructions are as plain, clear, concise, and as brief as possible." *Busta*, 276 Mont. at 373, 916 P.2d at 140.

¶25 Likewise, the "defective condition unreasonably dangerous" language should not have been submitted to the jury in this case because it is not plain, clear and concise. As McAlpines noted in their brief on appeal, the "unreasonably dangerous" language could be construed to mean that, in addition to proving a product is defective, the plaintiff must prove that it is "unreasonably dangerous." Such an instruction creates a new hurdle to plaintiffs in strict products liability cases which was never intended under this Court's interpretation of strict products liability law. We have previously held that a plaintiff can establish that a product is defective by proving that it is "capable of causing injury to the user beyond that which would be expected by the ordinary user." *Wise v. Ford Motor Co.* (1997), 284 Mont. 336, 340, 943 P.2d 1310, 1312 (citations omitted).

¶26 Accordingly, we hold that the District Court erred in instructing the jury that it must find that Weedone LV6 was in a "defective condition unreasonably dangerous" rather than instructing that it must find that Weedone LV6 was merely in a "defective condition."

## Issue 2.

¶27 *Whether the District Court erred in refusing to allow the McAlpines to introduce evidence of the herbicide's label language after Rhone-Poulenc's witnesses violated a motion in limine by referencing product labeling during examination.*

¶28 Prior to trial, the McAlpines moved alternatively for a motion in limine that would either prevent Rhone-Poulenc from referencing the herbicide's label, or allow all parties to discuss the label. The District Court granted the motion by barring all parties from discussing or introducing evidence of the contents of the label based in part on our prior decision in *McAlpine* as it related to FIFRA preemption.

¶29 At trial, Rhone-Poulenc's expert witness referenced the herbicide's label and implied that a user's failure to apply the herbicide according to the directions on the label could explain the type of damage seen in this case. Consequently, the McAlpines argued in the trial court and now on appeal that they should have been permitted rebuttal to establish that they complied with the herbicide's labeling requirements and instructions in all respects.

¶30 In *Sleath v. West Mont*, 2000 MT 381, ___ P.2d ___, 57 St.Rep. ___, we reversed our prior decision in *McAlpine* and held that FIFRA does not preempt state common law damage actions. Consequently, based on our decision in *Sleath*, neither party is barred from referencing the label language in further proceedings in this matter.

## Issue 3.

¶31 *Whether FIFRA renders evidence of the herbicide's label inadmissible where the cold damage effects of the herbicide on crops are not regulated by FIFRA or the EPA.*

¶32 The McAlpines argue that because the EPA does not regulate a herbicide's propensities to damage the crops which it is designed to protect, federal preemption should not apply. Hence the McAlpines maintain that there was no valid reason to exclude the language of the label from the evidence. Rhone-Poulenc argues on the other hand that the McAlpines did not properly preserve this issue for appeal and that, even if the issue had been properly preserved for appeal, the evidence would bar their claim under FIFRA.

¶33 As we noted in our discussion in the previous issue, we held in our recent decision in *Sleath* that FIFRA does not preempt state common law damage actions and we therefore reversed our prior decision in *McAlpine*. Consequently, based on our decision in *Sleath*, evidence of the product label is admissible in further proceedings in this matter.

¶34 Reversed and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER


Justice Karla M. Gray, dissenting.

¶35 I respectfully dissent from the entirety of the Court's opinion.

¶36 The Court's resolution of issues 2 and 3 is based on the recent decision in *Sleath v. West Mont*, 2000 MT 381 (decided December 28, 2000). My dissent on those issues in this case is based on my dissent in *Sleath*, which need not be repeated here.

¶37 As stated by the Court, issue 1 in the present case is whether the District Court erred in instructing the jury that it must find the herbicide was in a "defective condition unreasonably dangerous," rather than merely in a "defective condition," to impose liability on Rhone-Poulenc. The Court relies on *McJunkin* in concluding the trial court erred in instructing the jury by using the precise statutory language from § 27-1-719, MCA. I disagree. I would hold neither that case nor Montana Pattern Instruction (MPI) 7.00--relied on by the McAlpines--can trump the statutory language enacted by the Legislature in § 27-1-719, MCA, independently of this Court's decision in *McJunkin*. On that basis, I would determine that the instructions given, taken in their entirety, stated the applicable law of the case and, consequently, the District Court did not err in giving Instruction Nos. 11 and 12.

¶38 I begin by observing that Instruction No. 11 merely recites the "defective condition unreasonably dangerous" statutory language contained in § 27-1-719, MCA, which has existed and been effective since October 1, 1987. Since that instruction contains no

definition of the statutory phrase to aid the jury in its determination, the District Court in the present case also gave Instruction No. 12, which states simply that a product is in a "defective condition unreasonably dangerous" when it "is in a condition not contemplated by the consumer who purchases it, with the ordinary knowledge common to the community as to the product's characteristics." Nothing in that definition is confusing; indeed, it is plain, clear and concise and provides a common sense definition of the statutory phrase. Given that the phrase challenged by the McAlpines is defined in Instruction No. 12, I disagree with the Court that the phrase at issue is the kind of legal concept--such as "proximate cause" or "legal cause"--we held in *Busta* should not be submitted to a jury.

¶39 Nor do I agree with the Court's reliance on *McJunkin*, a case tried and appealed prior to the effective date of § 27-1-719, MCA, in resolving the issue before us here. The Court is correct that the appellant in that case argued the trial court erred in failing to instruct the jury on the theory of strict liability. *See McJunkin*, 229 Mont. at 435, 748 P.2d at 912. The issue there, however, had nothing to do with whether given jury instructions were or were not appropriate, because the question arose in the context of whether the theory had been properly pled and, then, whether there was evidence to support the giving of any jury instructions on the subject at all. *See McJunkin*, 229 Mont. at 442, 748 P.2d at 916.

¶40 Focusing on the latter subissue and clarifying that it was a common law issue requiring us to look to § 402A of the Restatement (Second) of Torts, we noted that § 402A bases liability on a product "in a defective condition unreasonably dangerous." We observed that the commentaries to § 402A, rather than the actual language in the section, set forth a dual test which require a plaintiff to prove the product is defective and also unreasonably dangerous. *See McJunkin*, 229 Mont. at 442-44, 748 P.2d at 916-17. Relying on Professor Keeton's criticism, we rejected the position taken in the commentaries and held that a plaintiff need not prove that a product is defective *and* unreasonably dangerous in all cases. *McJunkin*, 229 Mont. at 443-45, 748 P.2d at 917-18. Thus, *McJunkin* addressed the plaintiff's burden of proof as set forth in the commentaries to § 402A which effectively added the word "and" to the language actually contained in § 402A; it did not reject the "defective condition unreasonably dangerous" language used in the section. In other words, *McJunkin* addressed a substantially different question than that before us here, which relates only to whether the trial court erred in giving instructions containing the "defective condition unreasonably dangerous" language contained in both § 402A of the Restatement and § 27-1-719, MCA. I would hold that the District Court did not abuse its discretion in using the phrase "defective condition unreasonably dangerous" in

instructing the jury, particularly since it then defined the phrase in common sense and everyday language.

¶41 Turning, then, to § 27-1-719, MCA, the Court determines that since we interpreted the Restatement in *McJunkin*, and § 27-1-719, MCA, mirrors the language of § 402A, *McJunkin* "in effect, interprets that statute as well." Section 27-1-719, MCA, however, was not a legislative codification of the *McJunkin* decision after issuance of that decision. Rather, the statute was considered and passed by the Montana Legislature prior to the *McJunkin* opinion and entirely independent therefrom. In addition, as the above discussion reflects, the statute was neither applicable to nor addressed in *McJunkin*. Furthermore, as also addressed above, *McJunkin* did not interpret the actual language contained in either § 402A or § 27-1-719, MCA; it addressed and rejected a commentary which propounded a dual proof test by adding the word "and" to the "defective product unreasonably dangerous" language. The instruction at issue in the present case did not add the word "and" to the language contained in § 27-1-719, MCA. Nor did it imply a dual test in any way. Moreover, the District Court defined the statutory language in another instruction in common, easily understood language which also did not impose or imply a dual test.

¶42 As a final matter, it is appropriate to comment on the Court's reference to the McAlpines' assertion that the challenged instructions deviate from the MPIs. While the Court's purpose in including this reference is far from clear, I have never heard it suggested that the MPIs themselves are "the law" and I do not take the Court's reiteration of the McAlpines' position in this regard to mean otherwise.

¶43 The McAlpines are correct, of course, in stating that MPI 7.00--the actual instruction for which they contend--better reflects *McJunkin* than does Instruction No. 11 as given here. This fact is irrelevant, however, because a closer look at MPI 7.00 and the note accompanying it reflects another problem with the McAlpines' argument. The Civil Jury Commission note to MPI 7.00 reads as follows:

> NOTE: MPI 7.00 to 7.07 apply to all causes of action arising before 10/1/87. See McJunkin v. Kaufman, 44 St.Rep. 2111, 748 P.2d 910 (1987). The Commission expresses no opinion on whether these instructions apply to causes of action arising after 10/1/87 in light of MCA 27-1-719, effective 10/1/87.

I simply do not believe that either MPI 7.00 or *McJunkin* have any application to the present case and the jury instruction issue before us.

¶44 On issue 1, I would hold that the District Court did not abuse its discretion in instructing the jury. On issues 2 and 3, I would apply the holding in our 1997 *McAlpine* decision. In short, I would affirm the District Court and I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY